ESTATE OF JACOB BEYER, DECEASED, ELEANOR B. ZIPSER, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Beyer v. Commissioner
Docket No. 2631-71.
United States Tax Court
T.C. Memo 1974-24; 1974 Tax Ct. Memo LEXIS 291; 33 T.C.M. (CCH) 111; T.C.M. (RIA) 74024; January 30, 1974, Filed. Peter R. Newman, for the petitioner.
Michael K. Phalin, for the respondent. SCOTT MEMORANDUM OPINION
SCOTT, Judge: Respondent determined a deficiency in estate tax of The Estate of Jacob Beyer in the amount of $17,975.62. The issue for decision is whether, the value at the date of decedent's death of assets in a testamentary trust and the residuary estate *293 of decedent's wife Minnie Beyer who had predeceased him is includable 2 in decedent's gross estate. The resolution of this issue requires a determination of whether under the law of the State of New York, the decedent's power to consume both the principal of a trust created upon the death of Minnie Beyer and the assets of her residuary estate was limited by any ascertainable standard relating to his health, education, support or maintenance.
All of the facts have been stipulated and are found accordingly.
The decedent, Jacob Beyer, died testate and domiciled in the Borough of Queens, City of New York, New York on October 18, 1966. Letters testamentary were issued to Eleanor B. Zipser and Clarence Beyer by the Surrogate's Court, Queens County, New York on December 8, 1966.
Petitioner filed a Federal estate tax return with the district director of internal revenue in Brooklyn, New York on August 7, 1967. Eleanor B. Zipser, the executrix of the Estate of Jacob Beyer, was a resident of New York City at the time she filed her petition in this case.
Jacob Beyer and his wife, Minnie Beyer, executed a joint will on November 30, 1958. In part, the will provided as follows: 3
*294 SECOND: Upon the death of one of use, [sic] such portion of the property and estate of the one so dying first and all property of which she or he has power of disposal, as when added to all other property included in the amount allowed as a marital deduction in the Federal estate tax return of said estate, shall result in an amount equal to one-half (1/2) of the adjusted gross estate of the deceased, as defined by the Internal Revenue Act in effect at the time of death, is hereby given, devised and bequeathed to the Trustees herein named, upon the condition, however, that whatever remains after the death of the survivor, is given, devised and bequeathed as hereinafter set forth in paragraph "FIFTH". In computing the values of property, if any, passing under this clause, the final determination in the Federal estate tax proceeding shall control and only assets that qualify for such deduction shall pass under this clause, at their values as finally determined for Federal estate tax. The Trustees are to pay all the income therefrom as prescribed by the tax law in effect at the time of death, at least annually to the survivor during his or her life (together with so much of the principal *295 thereof as said survivor may, from time to time, in her or his sole discretion, by a writing or writings signed by said survivor and delivered to the Trustees, direct, for any purpose whatsoever).
* * *
(b) All the rest, residue and remainder of our property, both real and personal, of whatsoever kind and nature and wheresoever the same may be situated, upon the death of one of us, leaving the other surviving, all such property and estate of the one so dying first, and all property of which he or she has power of disposal, is hereby given, devised and bequeathed to the survivor, upon condition, however, that whatever so remains of the same after the death of the survivor, is given, devised and bequeathed, as hereinafter set forth in paragraph "FIFTH".
* * * 4 FIFTH: Following the death of both of us, then our property and estate then remaining and all property and estate of the survivor and all property of which we or either of us have power of disposition, is hereby given, devised and bequeathed as follows:
(a) On the death of both of use, [sic] the sum of FIVE THOUSAND and 00/100 (5,000.00) DOLLARS is hereby given and bequeathed to each of our grandchildren, JAN BEYER, *296 SUSAN BEYER, ARLYNN BEYER, MICHAEL BEYER, HENRY BEYER, HAROLD BEYER, INEZ BEYER, MARCIA H. ZIPSER and MYRA B. ZIPSER.
(b) Our interest in the real property now known as our residence property and situated at 53-45 69th Street, Maspeth, New York, is given and devised to ELEANOR B. ZIPSER.
(c) On the death of both of us the sum of FIFTY THOUSAND and 00/100 (50,000.00) DOLLARS is hereby given and bequeathed to ELEANOR B. ZIPSER.
In the event there be insufficient assets to pay the foregoing bequests to our beloved grandchildren and to our beloved daughter, then, and in such event, the said bequests are to be reduced on a pro-rata basis. We make no specific bequests to our beloved children, CLARENCE BEYER, ARTHUR BEYER and BERTRAM BEYER, not because of a lack of love for our said children, but because we feel, and they know, that we have already provided for them during our lives.
(d) Upon the death of both of us all of our household furniture and utensils, including jewelry, of which we or either of us have power of disposition, is hereby given, devised and bequeathed to our beloved daughter, ELEANOR B. ZIPSER. 5 (e) All the rest, residue and remainder of our estate and property *297 then remaining and all property and estate of survivor and all property over which we or either of us have power of disposition is hereby given, devised and bequeathed to our beloved children, CLARENCE BEYER, ARTHUR BEYER, BERTRAM BEYER AND ELEANOR B. ZIPSER, share and share alike.
* * *
NINTH: Upon the death of one us, leaving the other surviving, the survivor and CLARENCE BEYER, ARTHUR BEYER and BERTRAM BEYER and ELEANOR B. ZIPSER are hereby appointed Executors and Trustees of the Will of the one so dying first; upon the death of both of us, CLARENCE BEYER, ARTHUR BEYER, BERTRAM BEYER and ELEANOR B. ZIPSER are hereby appointed Executors and Trustees of our Joint Will and of our respective Wills, as herein expressed. The said Executors, upon the death of the survivor of us, shall have power to sell and convey any and all of our real property and give good and sufficient deed of conveyance to any and all real property of which we or either of us may die seized. We hereby further direct that our Executors and Trustees shall not be required to furnish any bond or bonds for the faithful performance of his or their duties as such Executors and/or Trustees, or both.
TENTH: We hereby *298 authorize and empower our Executors and Trustees, if in their discretion it shall seem expedient, as follows:
(a) To manage, mortgage or loose the whole or any part of our real or personal estate of which we or either of us may die seized or possessed, or any interest therein, without the mortgagee, lesee [sic] or tenant being liable to see to the application of the mortgage money or rent money.
(b) To sell either at public or private sale the whole or any part of our estate of which we or either of us may die 6 seized or possessed, or any interest therein, without the purchaser being liable to see to the application of the purchase money and to take back a portion of the purchase price by way of a purchase money mortgage.
(c) To hold and retain any securities, investments, stocks or bonds to which we or either of us have title at the time of our death and irrespective of whether the same constitute legal investments for trust funds or not. Our Trustees shall also have full power to exchange any such securities to which we or either of us have title at the time of our death for any other securities issued by the respective corporations whose shares of stocks they represent, *299 or, in their discretion, to exchange or to accept in lieu thereof, any new or other stock issued by any corporation which is formed as the result of merger or consolidation of any existing corporations in which we or either of us may hold stock at the time of our death. Our Trustees shall also have full power in their discretion to purchase and retain additional shares of stock in any corporation in which we or either of us may hold stock at the time of our death, or in any corporations resulting from the merger or consolidation of any corporations in which we or either of us may hold stock at the time of our death, and said Trustees shall not be responsible or liable for the shrinkage in value of any investments retained or made by them pursuant to this paragraph of our Joint Last Will and Agreement, in good faith, or by any other act of commission or omission taken in good faith in the administration of the trust established pursuant to this, our Last Will and Testament.
IN WITNESS WHEREOF, we have hereunto subscribed our names and affixed our seals to this, our Joint Last Will and Testament, this 30 day of November, 1958.
Minnie Beyer died on November 1, 1963, leaving a gross *300 estate of $78,189.99. 7 The Federal estate tax return filed for the estate of Jacob Beyer reported a taxable estate of $22,546.17, consisting solely of assets owned specifically by Jacob Beyer. The taxable estate reported for Jacob Beyer did not include the value of the assets contained in a trust created by the joint and mutual will of Jacob and Minnie Beyer upon the death of Minnie Beyer. Neither did the taxable estate reported for Jacob Beyer include the value of the assets contained in the residuary estate of Minnie Beyer. The assets in the testamentary estate had a combined fair market value at the time of Jacob Beyer's death of $68,373.95.
Respondent determined that Jacob Beyer had a general power of appointment over the assets in the testamentary trust created upon the death of Minnie Beyer and over the assets in the residual estate of Minnie Beyer and accordingly increased the taxable estate of Jacob Beyer by the amount of $68,373.95.
Although petitioner filed no brief in this case, at trial counsel for petitioner asserted that paragraph SECOND of the joint and mutual will as modified by paragraph FIFTH of the same will does not constitute a general power of appointment. *301 8 Section 2041(a) (2), I.R.C. 1954, [1] provides that the gross estate of a decedent includes the value of property over which the decedent possessed, exercised or released a general power of appointment created after October 21, 1942.
*302 Section 2041(b) in defining a general power of appointment for purposes of subsection 2041(a) provides in part as follows:
(b) Definitions. - For purposes of subsection (a) - (1) General power of appointment. - The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that - (A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment. 9 The petitioner's principal contention is that New York law imposed a limitation on decedent's power to invade, consume or appropriate the property in the testamentary trust and residuary estate of Minnie Beyer and that this limitation was based on an ascertainable standard relating to the health, education, support or maintenance of decedent. Specifically, petitioner's counsel asserted in his opening statement that under New York law the decedent's power of consumption was limited to the maintenance of his then current standard of living *303 and that this limitation, pursuant to the provisions of section 2041(b) (1) (A) removed decedent's power of consumption from the category of a general power of appointment.
In Estate of Edward N. Opal, 54 T.C. 154 (1970), affirmed 450 F.2d 1085 (C.A. 2, 1971), we analyzed the law of the State of New York with respect to the rights and obligations created in that State upon the execution of a joint will for the purpose of determining whether the estate of the first spouse to die was 10 entitled to the marital deduction provided for by Section 2056(b) (1). The issue there involved was whether the joint will constituted a contract between the spouses as to the disposition of the property remaining at the death of the last to die which would cause the interest of that spouse in the property of the first to die to be a terminable interest. In that case we discussed a number of New York cases which referred to the right of the surviving spouse to consume the estate of the other during his or her life. In this respect, in Rastetter v. Hoenninger, 214 N.Y. 66, 73, 108 N.E. 211, 212 (1915), the New York Court of Appeals stated:
Whilst importing *304 a contract the instrument [a joint will] is testamentary in character and as to the property of each speaks from his death. Each was at liberty during his lifetime to use his own as he saw fit, short of making a different testamentary disposition or a gift to defeat the purpose of the agreement, which was that upon his death each was to leave the property of which he was then possessed in the manner agreed upon. * * *
* * *
* * * the theory of the judgment [in the lower court] in this respect is that upon the execution of the joint will each of the testators became a trustee of his own property and, whilst entitled to the income, was disabled from disposing of the corpus. As I have already said, we construe the agreement differently. What the parties disabled themselves from doing was the making of a different testamentary disposition 11 after accepting the benefits of the agreement. Each, during his life, remained the absolute owner of his own with all the rights of an owner. Certainly nothing short of plain and express words to that effect should suffice in such a case to limit the use, or to impress a trust upon, the property of each during his own life. Of course, *305 the agreement had to be carried out honestly and in good faith. The survivor could not after accepting the benefits of the agreement make a gift in the nature, or in lieu, of a testamentary disposition or to defeat the purpose of the agreement. * * *
The power of the surviving comaker of a mutual will to alienate property under the laws of New York is discussed in Schwartz v. Horn, 31 N.Y. 2d 275, 290 N.E. 2d 816 (N.Y. Ct. App., 1972). There, mutual wills provided that the property of each of the makers was to go to the other and upon the death of the survivor was to be divided equally between their son and daughter. The wife's will expressly declared that, if her husband predeceased her, her personal property and her home at 55 Mile Square Road should be divided between her daughter and her son. Her husband predeceased her and some 3-1/2 years later, despite her promise to devise her home to her daughter and her son, she conveyed the home to her grandson. Upon her death approximately 4 years after the conveyance her daughter filed a petition to obtain her share of the residence. 12 In setting aside an order of the lower court dismissing the petition the Court *306 of Appeals stated at 818-819:
There is, of course, a vast difference between an agreement to bequeath or devise a specific piece of property - as here - to named individuals and an agreement between testators that the survivor will leave his entire estate - as in Rastetter - to particular beneficiaries. As indicated, it is our conclusion that in the first case, the agreement precludes an inconsistent inter vivos gift. But this does not mean that the agreement in the other case - that the entire estate be left to certain beneficiaries - necessarily prevents the survivor from making a gift during his lifetime, since such a gift would not necessarily defeat the purpose of the agreement [citations omitted]. In no instance, however, would a transfer - whether or not it defeats the purpose of the agreement - be prohibited when the property or its proceeds are used to meet the daily needs of the surviving testator [citations omitted].
In those situations not involving joint or mutual wills but rather the rights of life tenants vis-a-vis remaindermen, New York law has imposed a similar test. Federal as well as State courts have recognized that the right of the life tenant to consume *307 principal is not absolute but is limited by a standard of "good faith." United States v. Lincoln Rochester Trust Co., 297 F.2d 891 (C.A. 2, 1962). The requirement of "good faith," however, has been held to be satisfied merely by a demand in writing from the beneficiary for amounts of trust corpus. 13 In the case of In Re Woollard's Will, 295 N.Y. 390, 68 N.E. 2d 181 (N.Y. Ct. App., 1946), the deceased's will created a trust which provided that his widow would have an absolute right to all of the income or any part of the corpus of the trust as the widow shall deem necessary for her maintenance, comfort or well-being. The court held that the trustees of such a trust must comply with any written demand therefor made by decedent's widow because "[such] a statement is all that may be required from the widow, since the statement itself imports the exercise by her of good faith and honest judgment, and under the terms of the particular will no one may question or go behind such a determination and expression by her." Also see In Re Springett's Estate, 25 Misc. 2d 68, 206 N.Y. Supp. 2d 48 (Surrogate Court, 1960) in which a provision in a testamentary *308 trust that the trustee "shall also pay over to my said wife, at any time, such portion of the principal of the trust as she may say that she requires for her proper maintenance and support and her statement in that regard shall be accepted by my trustee, who shall be under no duty to determine the reasonableness or necessity of any such request" was held to require the trustee to deliver to the beneficiary upon her demand the entire principal of the trust. 14 If petitioner is contending that it is this "good faith" limitation which removes the powers given Jacob Beyer under his wife's will from the category of a general power of appointment as defined by section 2041, in our view, this "good faith" requirement is not a sufficient limitation. In Strite v. McGinnes, 330 F.2d 234, 240 (C.A. 3, 1964), the court said:
Nor is the fact that holders of Powers of Appointment are limited by the standard of good faith in Pennsylvania sufficient to constitute an ascertainable standard. The search of § 2041 is the breadth of power given a decedent. When that is determined, the tax consequence follows. Good faith exercise of a power is not determinative of its breadth. *309 Thus, the imposition of a good faith requirement upon decedent as the beneficiary of the trust created by Minnie's will is not sufficient to remove decedent's powers over the trust from the category of general powers of appointment as defined by section 2041. For even stronger reasons, those assets in Minnie's residuary estate must also be included in decedent's estate. So long as decedent made no gift to a third party in the nature of, or in lieu of, a testamentary disposition which would defeat the testamentary interest of Minnie, decedent had full and complete 15 power to exhaust the assets in Minnie's residuary estate. Such powers are general powers of appointment and the assets over which the powers may be exercised must be included in decedent's estate.
Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise indicated.
SEC. 2041. POWERS OF APPOINTMENT.
(a) In General. - The value of the gross estate shall include the value of all property - * * *
(2) Powers created after October 21, 1942. - To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.↩