Chief Judge Fuld.
This appeal, which involves mutual wills, calls upon us to decide whether the surviving testator, who had agreed to devise a specific piece of property to named beneficiaries, is privileged to make an inter vivas gift of that same property to a third party.
On March 18, 1958, Alfred Horn and his wife Bose executed mutual wills. The farmer’s will provided that it “ is drawn and made with the understanding that simultaneously herewith my wife, Bose Horn, will execute a Will upon terms and conditions therein set forth to the effect that this Will constitutes a part of a Mutual Will.” It also recited that “ [b]y separate instrument simultaneously made herewith my wife and I have declared our intention that her Will executed simultaneously with my Will shall be deemed Mutual Wills which shall not be modified or altered without our respective written consents”, and Mrs. Horn’s will contained a similar provision. The “ instrument ” referred to, which both signed, was an agreement not to change the provisions of their respective wills:
“ In consideration of the execution by both parties of Wills affecting property owned by the respective parties hereto, the undersigned hereby declare it to be their intention that said Wills are Mutual Wills and that each of said Wills may not be changed or altered by the parties hereto except upon the written consent first obtained by the other party to this agreement.”
The will of each provided, in the main, that the property of each was to go to the other and upon the death of the survivor was to be divided equally between their son and daughter.[1] Mrs. Horn’s will expressly declared that, if her husband pre *278 deceased her, her ‘ ‘ personal property ’ ’ and her ‘ ‘ home at 55 Mile Square Eoad, Yonkers, New York * * * shall be divided between my son, Herbert Horn, and my daughter, Joan M. Schwartz, share and share alike. ’ ’ Her husband died in October of 1961, and his will was duly admitted to probate. Some 3% years later, in May, 1965, the widow, despite her promise to devise her property on Mile Square Eoad to her daughter Joan and her son Herbert, conveyed it to the latter’s child, her grandson Jeffrey. Bose Horn continued to live on that property until shortly before she died in August, 1969.
Soon after her mother’s death, Joan commenced this action, pursuant to section 1501 of the Beal Property Actions and Proceedings Law, to obtain her share of the Mile Square Eoad premises under the mutual will, either by (1) an equitable conveyance, (2) the imposition of a constructive trust or (3) the appointment of a receiver. The defendants moved to dismiss the complaint on the ground that it failed to state a cause of action. It was and is their position that a testator’s contract to make a particular testamentary disposition of his property does not prevent him from making a different and inconsistent inter vivas disposition of that property. The plaintiff, on the other hand, maintains that her mother bound herself by mutual will and contract to distribute the described property equally between her daughter (the plaintiff) and her son (one of the defendants) and, consequently, was not free, during her lifetime, to make a gift of her home to her grandson.[2]
The court at Special Term dismissed the complaint, declaring that “ [m]utual wills containing agreements to bequeath property to specified persons do not, barring certain exceptions, preclude inter vivas disposition of such property. ’ ’ The Appellate Division affirmed the resulting order and our court granted leave to appeal.
We find no support, either in authority or reason, for the result reached below. Mrs. Horn expressly agreed to leave her Mile *279 Square Bead home to her son and daughter if she outlived her husband. He did predecease "her and, having had the benefit of his bounty, she may not violate her contract with impunity. While her husband was still alive, she could, of course, have, with his written consent, revoked her will and made a different disposition of the property. However, “after the agreement had been executed by [his] dying without making a different testamentary disposition of his property and after the acceptance by the other of the benefits of the agreement, it became obligatory upon [her].” (Rastetter v. Hoenninger, 214 N. Y. 66, 73.) It follows, therefore, as we determined in Bastetter, that the widow could not, after her spouse’s death, make “ a different testamentary disposition or a gift to defeat the purpose of the agreement ” (214 N. Y., at p. 73). Completely insupportable is the defendants’ claim that Mrs. Horn did no more than obligate herself not to change or alter her will and that she was free, during her lifetime, to do as she desired with the Mile Square Boad property.
There is, however, in the Rastetter opinion (214 N. Y., at pp. 73, 74) a sentence or two — relied upon by the defendants — which, when taken out of context, seems to support their contention. Although the court wrote that each testator was at liberty to use his own property as he saw fit, the rest of its discussion makes it exceedingly clear that the surviving testator is not free to make an inter vivas gift to defeat the agreement. The full statement reads in this way (214 N. Y., at p. 73):
“ Whilst importing a contract the instrument is testamentary in character and as to the property of each [testator] speaks from his death. Bach was at liberty during his lifetime to use his own as he saw fit, short of making a different testamentary disposition or a gift to defeat the purpose of the agreement, which was that upon his death each was to leave the property of which he was then possessed in the manner agreed upon. Very likely either during their joint lives might upon notice to the other have revoked; but, after the agreement had been executed by one dying without making a different testamentary disposition of his property and after the *280 acceptance by the other of the benefits of the agreement, it became obligatory upon the latter and enforceable in equity upon his death. ’' [3] (Emphasis supplied.)
In the case before us, Mrs. Horn had undertaken to devise her house on Mile Square Road to her son and daughter. If, as the complaint alleges, she made a gift of that property to a third party during her lifetime, she rendered the specific bequest impossible and thereby breached the agreement with her husband. The plaintiff is as much entitled to establish such a gift as she would have been to prove an inconsistent testamentary disposition. (See, e.g., Rich v. Mottek, 11 N Y 2d 90; Tutunjian v. Vetzigian, 299 N. Y. 315; Hermann v. Ludwig, 229 N. Y. 544, affg. 186 App. Div. 287.) The court’s statement in the Tutunjian case — though it was concerned with a testamentary disposition inconsistent with a prior joint will — is equally applicable here (299 N. Y., at p. 319): “ to permit the one who survives to gain the benefits of the joint will and then to flout its provisions in violation of the promise made to the other ‘ would be a mockery of justice ’. (Mutual Life Ins. Co. v. Holloday, 13 Abb. N.C. 16,24.)”
There is, of course, a vast difference between an agreement to bequeath or devise a specific piece of property — as here — to named individuals and an agreement between testators that the survivor will leave his entire estate — as in Rastetter — to particular beneficiaries. As indicated, it is our conclusion that in the first case, the agreement precludes an inconsistent inter vivas gift. But this does not mean that the agreement in the other case — that the entire estate be left to certain beneficiaries — necessarily prevents the survivor from making a gift during his lifetime, since such a gift would not necessarily defeat the purpose of the agreement. (See Rastetter v. Hoenninger, 214 N. Y. 66, 73, supra; see, also, Matter of Salisbury, 265 N. Y. 536, affg. 242 App. Div. 645.) In no instance, however, would a transfer— whether or not it defeats the purpose of the agreement — *281 be prohibited when the property or its proceeds are used to meet the daily needs of the surviving testator. (Cf. Rubensiein v. Mueller, 19 N Y 2d 228, 234; Dickinson v. Seaman, 193 N. Y. 18, 24.)[4]
In sum, then, if the plaintiff proves the allegations of her complaint upon the trial which is to be held, she is entitled to prevail.
The order appealed from should be reversed and the matter remitted to Supreme Court, Westchester County, for further proceedings in accordance with this opinion, with costs in all courts.
Judges Burke, Scileppi, Bergan, Breitel, Jasest and Gibsoh concur.
Order reversed, etc.

. The husband’s will, however, provided that his wife’s share of his estate was to be held for her in trust for life and that, upon her death, the remainder was to be divided between their children.

. Giving the complaint the liberal construction to which it is entitled, we read the allegation that Mrs.. Horn conveyed the property “ without adequate monetary consideration” as meaning that she made a “gift” of it. Indeed, such a reading is confirmed by the plaintiff’s recital in an affidavit — submitted in opposition to the defendants’ motion — that the transfer was “ without consideration ” and “ illusory.”

. The same thought was later repeated (214 N. Y., at p. 74): “Each [testator], during his life, remained the absolute owner of his own [property] with all the rights of an owner. * * * Of course, the agreement had to be carried out honestly and in good faith. The survivor could not after accepting the benefits of the agreement make a gift in the nature, or in lieu, of a testamentary disposition or to defeat the purpose of the agreement.”

. As we noted in the Dickinson ease (193 N. Y. 18, 24, supra), which dealt with a prenuptial agreement, “It would be unreasonable to hold that either party * * * intended that the head of the family, though he might live to be an old man and be worth millions, could never consider an application for charity without a blush, because by agreement with his own wife, he could not give any substantial sum even to the most noble object. * * * [I]t is further asked where the line is to be drawn between the power to give away all and the power to give away nothing. That line is to be drawn where the courts always draw it when they can, along the boundary of good faith.”