John Tucker **MURPHY, Sr., Charles E. Murphy, Dorothy Maryse Neubrand, Evelyn Collette Nolan, Margaret M. Walsh, Winifred Fitzmorris, Keith Tucker, and Donna Oleski, Plaintiffs–Appellees,**

v.

**Charles Frederick GLENN and Jean Kathryn Glenn, Defendants– Appellants.**

Nos. 96CA0093, 96CA0094.

Colorado Court of Appeals, Div. IV.

March 5, 1998.

Rehearing Denied April 16, 1998.

Certiorari Denied Oct. 19, 1998.

582

Graft, Thomson and Toedte, P.C., Lynn Wm. Toedte, Alexander L. Thomson, Englewood, for Plaintiffs–Appellees.

Slivka, Robinson, Waters & O'Dorisio, P.C., Laura J. Vogelgesang, Denver, for Defendants–Appellants.

Michael R. Dice and Co., LLC, Michael R. Dice, Ronald K. Ledgerwood, on the briefs, Denver, for Defendants–Appellants.

Opinion by Judge ROY.

In this estate proceeding, defendants, Charles F. and Jean K. Glenn (the Glenns), appeal a judgment entered on a jury verdict finding that Emily B. Tucker (wife) executed a will in 1962 pursuant to a binding and enforceable agreement with her husband, who predeceased her, to distribute their property in a particular manner, valid at her death. The Glenns also challenge a separate order of the trial court imposing a constructive trust over the assets of wife's estate, including property wife had transferred to an *inter vivos* trust, for the benefit of plaintiffs, John T. Murphy, Sr., Charles E. Murphy, Dorothy M. Neubrand, Evelyn C. Nolan, Margaret M. Walsh, Winifred Fitzmorris, Keith Tucker, and Donna Oleski (family), devisees under husband's 1962 will. The cases are consolidated on appeal. We affirm.

Following the death of husband on September 17, 1982, wife probated his will dated July 10, 1962, in which he left $2,500 to his daughter by a prior marriage and the remainder of his estate to wife. Because it was then held in joint tenancy with right of survivorship, all of the property in which husband had an interest passed to wife outside the probate estate.

Husband's will further provided that, in the event wife died before him, the residue of his estate should be divided equally amongst the members of the family, consisting of relatives of both husband and wife. In addition, husband's will contained the following provision:

> That I wish to state that I have carefully considered the contents and provisions of this My Last Will and Testament and have discussed the same completely with my wife, ... and my attorney ... and the contents and provisions hereof, and as written herein, are those I desire taking into consideration all circumstances and controlling facts. I understand my said wife has agreed to such provisions and is in full agreement with the same and she will likewise have prepared and execute a like Last Will and Testament with the exception that in her Last Will and Testament there will be no provision therein contained for the specific bequest to my said daughter ... and I state here that I agree to my said wife making such a Last Will and Testament, and upon this Last Will and Testament being duly executed by me and my said wife having duly executed her said Last Will and Testament, the contents and provisions of the said two Last Wills and Testaments shall not be changed and altered by one spouse without the full written knowledge and approval of the other spouse.

In 1984, wife established an *inter vivos* revocable trust naming the Glenns as beneficiaries upon her death and transferred her residence and various commercial properties into the trust. In 1989, wife executed a will, revoking all previous wills, in which she named Charles Glenn as personal representative, bequeathed $5,000 to her niece, and left the balance of her probate estate to the Glenns.

Wife died March 19, 1994, leaving an estate, probate and nonprobate, with an estimated pretax value of $2.6 million. Charles Glenn, in his capacity as personal representative under the 1989 will, submitted that will for informal probate. The 1989 will was admitted to formal probate by stipulation of the parties, and Charles Glenn was appointed personal representative subject to the pending litigation. No other will executed by wife has been discovered.

The family filed an action against the Glenns claiming tortious interference with contract and seeking imposition of a constructive trust on wife's assets. The family claimed that wife and husband had executed identical mutual wills in 1962, creating a contractual obligation binding on wife to distribute her estate in accordance with the distribution plan contained in husband's will.

Trial was to a jury. The family's tortious interference with contract claim was dismissed at the conclusion of their case. The jury returned a special verdict finding that husband and wife had a valid agreement in the form of two wills which provided that the estate of the survivor was to be distributed in accordance with husband's will, which was in full force and effect at the time of husband's death.

## I.

At the outset, we reject the Glenns' argument that the family's claim was time-barred by § 15–12–803, C.R.S.1997, which bars claims by creditors of the estate that are not filed within four months after they arise. A will contest, or a dispute over the distribution of the estate, is not a claim against the estate as contemplated by § 15–12–803. Therefore, § 15–12–803 does not apply. *In re Estate of Haywood,* 43 Colo.App. 127, 599 P.2d 976 (1979).

## II.

The Glenns next contend there was insufficient evidence as a matter of law to support the jury's finding that wife was bound by any contract or agreement between herself and her deceased husband to dispose of her estate in accordance with a common plan. We disagree.

Appellate courts are bound by a jury's findings, *Hock v. New York Life Insurance Co.,* 876 P.2d 1242 (Colo.1994), and can only disturb a jury verdict if clearly erroneous. *Brewer v. American & Foreign Insurance Co.,* 837 P.2d 236 (Colo.App.1992).

It is within the jury's province alone to determine the weight of the evidence and the credibility of witnesses, and to draw all reasonable inferences of fact therefrom. *Fair v. Red Lion Inn,* 920 P.2d 820 (Colo. App.1995). As a result, a jury's verdict will not be disturbed if there is *any* support for it in the record. *Nutting v. Northern Energy, Inc.,* 874 P.2d 482 (Colo.App.1994).

A mutual will is an agreement between two persons to devise property according to a "common plan," by means of separate instruments that are reciprocal, identical, or substantially similar, and which frequently contain a promise on the part of each party not to revoke. 1 W. Page, *Wills* § 11.1 (Bowe–Parker rev. ed.1960).

Colo. Sess. Laws 1959, ch. 284, § 152–5–42(1) at 846, in effect at the time wife and husband drew their wills and which the parties agree controls this dispute, provided as follows:

Every agreement to make a will, to give a legacy or make a devise, or to make any provision by will, or to refrain from making or revoking a will, shall be void unless such agreement, or some note or memorandum thereof, shall be in writing and subscribed by the party charged therewith. The fact that two or more wills were executed at or about the same time by different persons or shall contain mutual or reciprocal provisions, or both, shall not be any evidence that such wills were made in consideration of each other.

The controlling statute is to be interpreted as a statute of frauds particular to contracts regarding testamentary succession. *Rieck v. Rieck,* 724 P.2d 674 (Colo.App.1986)(construing a later version of the statute). It is not, in our view, a state-

ment of public policy against, or intended to discourage, contracts to make a will.

The controlling statute was adopted by the General Assembly in reaction to *Hoff v. Armbruster*, 125 Colo. 198, 242 P.2d 604 (1952), in which our supreme court held that contemporaneous identical wills, which provided that the residuary estate would pass to the surviving spouse and, failing that, to relatives of both husband and wife, constituted a contract to make a will. The facts of that case are strikingly similar to those at issue here. Most particularly, there the wills of both the husband and wife left portions of the estate to the family of the first to die. The primary difference, however, is that here husband's will contained the provision alluding to a contract or agreement between husband and wife, and the contemporaneous will of the survivor, if any, is not available.

Because no other memorandum or note is alleged, the issue is whether wife executed a will containing the mutual and reciprocal provisions contained in, and the contract language contemplated by, husband's will, making her will irrevocable without husband's consent during their joint lives and irrevocable upon husband's death.

No will, original or duplicate, executed by wife in 1962 was produced.

In the event the original of a writing is lost, destroyed, or is not obtainable, or is in the possession of the opponent, other evidence of the contents of the writing is admissible. CRE 1004; *Decker v. Browning–Ferris Industries of Colorado, Inc.*, 903 P.2d 1150 (Colo.App.1995). The existence and contents of such a document must be proved by a preponderance of the evidence. Section 13–25–127, C.R.S.1997; *cf. Hoff v. Armbruster, supra* (decided prior to adoption of § 13–25–127 and holding evidence must be clear and convincing).

Here, the family offered as evidence of a contract between husband and wife the testimony of three disinterested witnesses: wife's accountant, wife's financial consultant, and one of wife's friends.

Wife's accountant testified that: (1) he had never seen a will executed by wife in 1962 or containing any contractual language; (2) he understood the couple had identical wills based on a conversation with husband and wife in 1981; (3) neither husband nor wife took any steps to change their wills before husband's death; (4) in 1989 wife handed him a piece of paper she described as her "new will"; and (5) he drafted wife's 1989 will based on that piece of paper.

Wife's financial consultant, who did not meet wife until after husband's death, testified that: (1) he understood wife had a prior will based on a conversation with her in which she mentioned that husband took care of those matters and that she needed to update her will; and (2) he did see wife's 1989 will, which she described as an updated will.

Wife's friend testified that wife told her that: (1) she had a will when husband died; (2) her will was the same as husband's; and (3) she would never change her will or go against husband's wishes.

The family called an attorney as an expert witness as to the standard of practice in the preparation of contracts to make a will. That expert expressed the opinion that the standard of practice would dictate that the attorney who drafted husband's will containing the contract language would have also drafted a similar will for wife, and the failure to do so would constitute malpractice. Therefore, the expert opined that wife had such a will.

No person testified to having seen or read wife's 1962 will. While the evidence was by no means strong, there was, in our view, evidence sufficient for the jury to conclude that wife had a will at husband's death which was identical with husband's, and which contained the contract language making it irrevocable upon husband's death.

Having so concluded, we need not address the Glenns' arguments that the trial court erred in denying their motion to dismiss at the close of family's case or in denying their motion for a judgment notwithstanding the verdict.

### III.

We also reject the Glenns' contention that the second trial judge did not have the authority to rule on post-trial motions.

A successor judge may grant a new trial upon a determination that he or she is unable to rule on post-trial matters as a result of not having been at the original trial. C.R.C.P. 63. However, it is within a successor judge's discretion to rule on post-trial motions challenging the sufficiency of the evidence, and there is a presumption that the trial judge's rulings are correct. *Faris v. Rothenberg,* 648 P.2d 1089 (Colo.1982). In addition, we note that such motions are deemed denied sixty days after filing if no action is taken. C.R.C.P 59.

There is no evidence that the successor judge here abused his discretion by denying the Glenns' post-trial motions and entering an order based on the jury verdict.

## IV.

Next, the Glenns contend that wife's agreement with her husband did not prevent her from creating a living trust and that the trial court erred in transferring the assets from that trust into a constructive trust for the benefit of the family. We disagree.

Where there is an agreement to execute wills that are revocable only upon consent of the other party, the will of the surviving party becomes irrevocable upon the other party's death. *See Rieck v. Rieck, supra.*

Whether creation of an *inter vivos* trust is a breach of a contractual will is a question of first impression in Colorado.

A noted treatise on the subject provides: A general covenant to devise, which does not refer to specific property, does not prevent the promisor from making conveyances during his lifetime. Such a covenant has been held not to prevent him from making gifts during his lifetime, if reasonable in amount and not made to evade performance. If the contract provides for devising or bequeathing all that the promisor owns at his death, he may convey his property during his lifetime if such conveyance is not in fraud of the rights of the promisee. A contract to devise all of the property of which the promisor should die possessed was held not to reserve to the promisor the right to convey any considerable part of the property gratuitously.

1 W. Page, *Wills* § 10.23 (Bowe–Parker rev. ed.1960).

In other jurisdictions there is support for the proposition that a party who is bound by a contract to make a will may make reasonable gifts during his or her lifetime and use the property for reasonable living expenses, but may not transfer the bulk of the estate in a way contrary to the terms of the agreement embodied in a mutual will. *Brewer v. Simpson,* 53 Cal.2d 567, 2 Cal.Rptr. 609, 349 P.2d 289 (1960); *Boyle v. Schmitt,* 578 So.2d 367 (Fla.App.1991); *Ikegami v. Ikegami,* 1 Haw.App. 505, 620 P.2d 768 (1980); *Foulds v. First National Bank,* 103 N.M. 361, 707 P.2d 1171 (1985); *Schwartz v. Horn,* 31 N.Y.2d 275, 338 N.Y.S.2d 613, 290 N.E.2d 816 (1972); *Robison v. Graham,* 799 P.2d 610 (Okla. 1990); *Newell v. Ayers,* 23 Wash.App. 767, 598 P.2d 3 (1979); *In re Estate of Chayka,* 47 Wis.2d 102, 176 N.W.2d 561 (1970); *see also* W. McGovern, Jr., S. Kurtz, & J. Rein, *Wills, Trusts & Estates* § 9.5 (1988).

In *In re Estate of Chayka, supra,* the court explained that the contract underlying the provisions of a mutual will is like any other contract in which there is an implied condition of good faith. The court in that case declared that the *inter vivos* transfer by the wife of most of her property to her second husband, following the death of her first husband with whom she executed a mutual will, was a breach of her obligation under that will because it defeated the purpose of the earlier agreement with her first husband.

The court stated:
"Should it be held that the promisor is always left free to defeat the effect of his promise by completely and deliberately denuding himself of his assets immediately after entering into the bargain, it would seem that the contracts could serve very little purpose other than that of being either gambling devices or instruments of fraud and would be unworthy of legal protection.... A party to such a contract should be made to understand clearly that the law does not permit a man to have his cake and eat it too."

*In re Estate of Chayka, supra* (fn.8).

Likewise here, wife's *inter vivos* trust contained a substantial portion of her

assets at the time of her death. To uphold the trust with the Glenns as the beneficiaries on the death of wife would be to defeat the purpose of the agreement between her and her husband to devise their property to the family. Thus, the trial court committed no error in transferring the property from wife's *inter vivos* trust into a constructive trust for the benefit of the family. In addition, we note that the trial court could have, in the alternative, declared the *inter vivos* trust void in light of the irrevocable will, which would have resulted in the assets of the trust passing in probate pursuant to the estate plan agreed upon by husband and wife and which was binding on wife.

## V.

■ The Glenns also assert that the trial court erred by not excluding the testimony of certain party witnesses as incompetent under the Dead Man's Statute, § 13–90–102, C.R.S. 1997. We conclude any error was harmless.

Section 13–90–102 provides, subject to several exceptions, as follows:

(1) No party to any civil action ... shall be allowed to testify ... when any adverse party sues or defends ... as the executor or administrator, heir, legatee, or devisee of any deceased person. . . .

Here, when the family called the first one of its members to testify, the Glenns objected on the grounds of competency. The following exchanges occurred:

Glenns' Counsel: Objection, Your Honor. I have to object at this point to [family member's] competence as a witness at all based on the provisions of the Colorado Dead Man's Statute.

. . . .

The Court: I guess what you are saying is the—you're objecting to the various nieces and nephews testifying about conversations with either Arch and Emily Tucker.

Glenns' Counsel: Yes, sir.

The Court: They can testify about other things. You are not saying they're totally muzzled?

Glenns' Counsel: Not at all. But I have to make the objection now. And I think it

would be helpful to counsel, the Court, and most of all the jury for there to be an explanation to the jury and the rest of us as to what they can testify to and what they can't testify to.

And I'm—what I'm saying, Judge, is we're asking you to exclude the matters that are prohibited by the statute, namely conversations or transactions with Arch or Emily during their lifetimes. They're not allowed to testify as to that.

. . . .

The Court: Basically, what we're saying is these eight folks can't testify about private conversations with Emily concerning her estate plans.

Family's Counsel: Okay.

The Court: And if [family member] is going to be our sample lamb, I can't let him talk about what Emily told him privately about her estate planning. Is that a clear enough statement of my position?

The bulk of the testimony elicited from members of the family was their relationship to husband or wife, where they lived, what they did, and how often and by what means they had been in contact with husband and wife. The family relationships were not in dispute.

■ One family member testified as to a discussion of the distribution of the estate at her wedding. The discussion included both husband and wife but related to a comment by wife. Wife's comment was admissible pursuant to § 13–90–102(1)(a)(II)(f), C.R.S. 1997, as it was made in the presence of her sister-in-law, the witness' mother, a family member then over the age of 16 who was present in court.

Another family member testified as to a conversation with husband between 1979 and 1981 in which husband indicated that his siblings would participate in the distribution of the estate. It was not contested that husband's will so provided at the time of the conversation.

■ Error predicated on the admission of evidence is harmless unless it affects the substantial rights of a party. *Hancock v. State*, 758 P.2d 1372 (Colo.1988). The error

is harmless when the same result would have obtained even if the evidence had been excluded. *Clark v. Buhring,* 761 P.2d 266 (Colo.App.1988).

Because of our ruling that any error in admitting the testimony was harmless, we do not address the Glenns' additional arguments that the testimony should have also been excluded under the hearsay rule.

## VI.

 The Glenns also argue that the trial court erred in permitting the testimony of a disinterested third party relating to a conversation with wife about her will on the grounds that the testimony is barred by the rule against hearsay. Again, we disagree.

CRE 803(3) provides that:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(3) A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The rule, stripped of its negatives, permits the introduction of statements of memory or belief to prove the fact remembered or believed as to the execution, revocation, identification, or terms of a declarant's will. J. Strong, *McCormick on Evidence* § 276 (4th ed.1992).

Here, the witness was asked to relate a conversation with wife which occurred in about 1987 in which wife stated that she would never change husband's will, that her will was the same, and that she would never go against husband's wishes. The witness further stated:

Yes. She [wife] did state that they had them drawn up at the same time, and they were alike, that if one preceded the other in death, then the remaining spouse would receive everything. And then after that, it would go to the relatives.

We conclude that, pursuant to CRE 803(3), this testimony was admissible to show that husband and wife had wills drawn at the same time, the terms of the wills, and wife's understanding of the implications of the wills.

## VII.

 Lastly, we reject the Glenns' argument that the joint tenancy statute, § 15–15–202, C.R.S.1997, has any bearing on wife's obligations. The Glenns argue that, because wife received the properties constituting the estate by virtue of their being held in joint tenancy with husband at the time of husband's death, she is not bound by the contract to make a will. We disagree.

The statute provided that the making of a will does not destroy an existing joint tenancy and that the property held in joint tenancy shall pass to the surviving joint tenant by operation of law, the probated will notwithstanding. In our view, our supreme court's holding in *Hoff v. Armbruster, supra,* is dispositive. In *Hoff,* the will was not probated and the property passed to the survivor by joint tenancy. Despite this fact, the supreme court held that there was a valid contract to make a will binding on the wife, irrevocable following husband's death, and passing wife's entire estate including property which passed to her by operation of law.

The orders of the trial court are affirmed.

NEY and MARQUEZ, JJ., concur.