The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
July 25, 2019

## 2019COA113

**No. 18CA0950, *23 LTD v. Herman* — Labor and Industry —
Employment Contracts — Noncompetition Agreements —
Nonsolicitation Agreements**

In this case concerning the alleged breach of an employment

agreement's noncompete and nonsolicitation provisions, the

division holds that parties to an employment, noncompete, or

nonsolicitation agreement cannot contractually obligate a court to

blue pencil noncompete or nonsolicitation provisions to render any

unenforceable terms enforceable. Thus, the district court did not

err or abuse its discretion when it declined to blue pencil a

nonsolicitation provision that is unenforceable under Colorado law.

Court of Appeals No. 18CA0950
City and County of Denver District Court No. 14CV34518
Honorable J. Eric Elliff, Judge

23 LTD, d/b/a Bradsby Group, a Colorado corporation,

Plaintiff-Appellant and Cross-Appellee,

v.

Tracy Herman,

Defendant-Appellee and Cross-Appellant.

JUDGMENT AFFIRMED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BERGER
Dunn and Navarro, JJ., concur

Announced July 25, 2019

Sherman & Howard, L.L.C., Tamir I. Goldstein, William R. Reed, Denver,
Colorado, for Plaintiff-Appellant and Cross-Appellee

McElroy, Deutsch, Mulvaney & Carpenter, LLP, Kristi L. Blumhardt, Lily
Ramirez, Englewood, Colorado, for Defendant-Appellee and Cross-Appellant

¶ 1     This case presents an employment law issue of first impression in Colorado — when, if ever, is a court required to blue pencil a noncompete or nonsolicitation[1] agreement to conform it to Colorado law?[2]

¶ 2     23 LTD, d/b/a Bradsby Group (Bradsby), sued former employee Tracy Herman for breach of noncompete and nonsolicitation provisions in her employment agreement. A jury determined that Herman had not breached the noncompete provision. The jury returned a verdict (and awarded nominal damages of one dollar) in favor of Bradsby on the nonsolicitation claim, but the district court set aside that verdict and entered judgment in favor of Herman because the nonsolicitation provision violates Colorado law and because the court declined to narrow the

---

[1] This provision is also sometimes referred to as a noncontact or no-contact agreement.

[2] While some courts use the term "blue penciling" to refer only to the removal of words from a noncompete or nonsolicitation provision without modifying or adding any other terms, *Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 968 F.2d 1463, 1469 (1st Cir. 1992), others use the term to refer more generally to any court modifications of such provisions, *ADP, LLC v. Rafferty*, 923 F.3d 113, 120 n.7 (3d Cir. 2019). We use the term "blue pencil" to refer to any modification of a noncompete or nonsolicitation provision by a court.

provision to render it enforceable. Despite entering judgment in favor of Herman on both claims, the court denied her request for attorney fees under the agreement's fee-shifting provision. Bradsby appeals the merits judgment, and Herman cross-appeals the denial of attorney fees.

¶ 3 We conclude that the record supports the jury's verdict on the noncompete claim and that the court did not err or abuse its discretion in declining to blue pencil the nonsolicitation provision. Thus, we affirm the court's merits judgment. We also conclude that Herman is entitled to attorney fees because she prevailed on both breach of contract claims, and we therefore reverse the court's order denying attorney fees and remand with directions.

I.    Relevant Facts and Procedural History

¶ 4 Bradsby hired Herman in 2009 as a legal recruiter. When she was hired, she signed an Account Executive Employment Agreement that included noncompete and nonsolicitation provisions (agreement). The noncompete provision states, in relevant part:

> Upon termination of his/her employment with Bradsby, Account Executive . . . shall not . . . within the Restricted Area from a period of twelve (12) months from the date of termination of employment become an owner,

partner, investor, or shareholder in any entity that competes with Bradsby without prior written consent of Bradsby . . . .

¶ 5    The agreement defines the "Restricted Area" as any place "within 30 miles of Bradsby's principal place of business," which is in downtown Denver.

¶ 6    The nonsolicitation provision states, in pertinent part:

> Upon termination of his/her employment with Bradsby, Account Executive . . . shall not within the Restricted Area, for a period of twelve (12) months from the date of termination of employment, contact or solicit the business of any person, entity, applicant, client, employer or prospective employer who Bradsby has contacted or solicited during the twelve (12) months prior to the Account Executive's termination . . . .

¶ 7    The agreement also includes provisions prohibiting Herman from disclosing Bradsby's confidential information or using it for her own benefit (the confidentiality provisions) without the prior written consent of Bradsby.

¶ 8    While employed by Bradsby, Herman worked with one of Bradsby's clients, the law firm Vranesh and Raisch, LLP, to fill various hiring needs. She also worked with a lawyer applicant to help him find a job. Her efforts included setting up an interview

3

with Vranesh. Vranesh offered the applicant a job in 2012, but the applicant declined the offer.

¶ 9 For reasons not relevant to our analysis, Bradsby terminated Herman's employment in 2014. At termination, Bradsby reminded Herman of her noncompete and nonsolicitation obligations. Herman sought clarification as to the scope of those obligations and requested that the Restricted Area be reduced from a thirty-mile radius to a twenty-eight mile radius (Herman's home at the time was twenty-eight miles from Bradsby's main office). Bradsby refused to modify the terms of the agreement.

¶ 10 Not long after, Herman formed Touchstone Legal Resources, LLC. She obtained a mailbox at a UPS store in Monument, Colorado — outside the Restricted Area — and listed this as the new company's address in its organizational documents (though she later testified that she did non-recruiting work for Touchstone from her home). At trial, she described Touchstone's business as "10 percent" recruiting and "90 percent" everything else, including law firm succession planning.

¶ 11 After starting her new business, she reached out to the prior applicant to see if anyone in his network would be interested in an

open position with the City of Fort Collins (the applicant had significantly more experience than the position required).

¶ 12    The applicant then inquired whether Vranesh still had a position open. As a result of this inquiry, Vranesh ultimately hired the applicant and paid Herman (or Touchstone) $12,000 for her role in the hiring.

¶ 13    When Bradsby learned that Herman had played a role in Vranesh's hiring of the applicant, Bradsby sued her for breach of the noncompete and nonsolicitation provisions, arguing that enforcement of those provisions was necessary to protect its trade secrets.

¶ 14    Both parties moved for summary judgment. The district court granted Herman's motion for summary judgment, concluding that the nonsolicitation provision "effectively prevents [Herman] from competing at all for a one year period unless she effectively removes herself from the Denver metropolitan area" because it "prohibits [Herman] from contacting *any* person or entity in *any* of the industries to which [Bradsby] provides recruiting services if that person or entity had contact with *any* Bradsby employee." The court further concluded that the nonsolicitation provision is so

5

broad that it renders the noncompete provision superfluous and concluded, as a result, that both provisions are "void and in violation of Colorado law." The court "decline[d] to 'blue pencil' the Agreement in order to bring it into compliance," stating that the agreement's confidentiality provisions adequately protect Bradsby's trade secrets.

¶ 15　　Bradsby appealed to this court. A different division held that the enforceability of the noncompete provision turned on the existence of Bradsby's alleged trade secrets and remanded the case for a determination of, among other things, whether Bradsby held trade secrets. *23 LTD v. Herman*, (Colo. App. No. 16CA1095, Aug. 3, 2017) (not published pursuant to C.A.R. 35(e)) (*Bradsby I*). The division also held that the nonsolicitation provision is "fatally overbroad" and directed the district court on remand to "revisit its decision not to blue pencil [the nonsolicitation provision] based on the trade secret findings." *Bradsby I*, slip op. at ¶¶ 23, 28. Finally, the division rejected the district court's analysis that the nonsolicitation and confidentiality provisions are coterminous with respect to trade secret protection.

¶ 16    On remand, the jury determined that Bradsby possessed trade secrets, but that Herman had not violated the noncompete provisions.  The jury also found that Herman had violated the nonsolicitation provision and awarded Bradsby damages of one dollar.  On post-trial proceedings, the district court declined to blue pencil the overly broad nonsolicitation provision (recall the district court concluded and *Bradsby I* held that, without modification, the nonsolicitation provision violates Colorado law) and entered judgment in favor of Herman on all claims.

¶ 17    The court denied Herman's request for attorney fees because it concluded that Herman had violated the confidentiality provisions of her employment agreement — a violation that was not pleaded or at issue in the case.

## II.    Analysis

¶ 18    Bradsby argues that the district court erred in declining to blue pencil the "fatally overbroad" nonsolicitation provision because the agreement required the court to do so.  *Bradsby I,* slip op. at ¶ 23.  To the extent the agreement did not actually require the court to blue pencil the agreement, Bradsby contends the court abused its discretion in declining to do so.  Finally, Bradsby argues that the

7

record does not support the jury's verdict that Herman did not violate the noncompete provision. We reject all these contentions.[3]

¶ 19    On cross-appeal, Herman argues that the court abused its discretion in declining to award her attorney fees under the agreement's fee-shifting provision. We conclude that the court's reasoning was improper and that, under these facts, Herman is the prevailing party entitled to attorney fees under the fee-shifting provision.

### A. The District Court Did Not Err or Abuse Its Discretion in Declining to Blue Pencil the Unenforceable Nonsolicitation Provision

#### 1. General Principles

¶ 20    As a general matter, "[a]greements not to compete, with some narrow exceptions, are contrary to the public policy of Colorado." *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 526 (Colo. App. 2011). "The core policy underlying the unenforceability of noncompetition provisions is a prohibition on the restraint of trade or . . . the right to make a living." *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 844

---

[3] Bradsby also asks that if it prevails on this appeal, we remand to the district court for an award of liquidated damages. Because we affirm the district court's merits judgment, that question is moot.

(Colo. App. 2007). A nonsolicitation agreement is a form of noncompete agreement. *Saturn Sys.*, 252 P.3d at 526.

¶ 21    There are exceptions to the general rule. One such exception is set forth in section 8-2-113(2)(b), C.R.S. 2018, which provides that "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this [prohibition] shall not apply to: . . . [a]ny contract for the protection of trade secrets." While section 8-2-113(2)(b) provides a trade secret exception to the statutory prohibition on noncompete agreements, any such limitations must be reasonable and narrowly drafted. *Saturn Sys.*, 252 P.3d at 526.

¶ 22    As explained in detail below, Colorado law provides little guidance as to when, and to what extent, trial courts may blue pencil unreasonable noncompete provisions, so we look to decisions of courts in other jurisdictions.

¶ 23    In states that permit the enforcement of reasonable noncompete agreements, courts have taken three different general approaches to unenforceable noncompete provisions, described by the First Circuit as follows:

(1) the "all or nothing" approach, which would void the restrictive covenant entirely if any part is unenforceable, (2) the "blue pencil" approach, which enables the court to enforce the reasonable terms provided the covenant remains grammatically coherent once its unreasonable provisions are excised, and (3) the "partial enforcement" approach, which reforms [(blue pencils)] and enforces the restrictive covenant *to the extent it is reasonable*, unless the "circumstances indicate bad faith or deliberate overreaching" on the part of the employer.

*Ferrofluidics Corp. v. Advanced Vacuum Components, Inc.*, 968 F.2d 1463, 1469 (1st Cir. 1992) (quoting *Durapin, Inc. v. Am. Prods., Inc.*, 559 A.2d 1051, 1058 (R.I. 1989)); *see also* 6 *Williston on Contracts* § 13:24, Westlaw (4th ed. database updated May 2019) (same).

¶ 24    Though Colorado appellate courts have not explicitly endorsed any of these three approaches, they have made clear that trial courts have the discretion to blue pencil unenforceable noncompete provisions, at least to some extent.[4]

---

[4] Though Bradsby asks this court to blue pencil the agreement, Bradsby has not cited, and we are unaware of, any case in which a Colorado appellate court has blue penciled the provisions of a noncompete, or any authority that would permit us to do so. We thus reject this request.

¶ 25    In *National Graphics Co. v. Dilley*, 681 P.2d 546, 547 (Colo.

App. 1984), the court recognized that a "trial court has the

discretion to reform an unreasonable territorial restriction set forth

in a covenant not to compete in order to make the scope of the

geographic area reasonable" but concluded that the trial court did

not abuse its discretion in "refusing to rewrite the parties'

agreement by supplying the limitations of both duration and

geographic scope."

¶ 26    In *Gulick v. A. Robert Strawn & Associates, Inc.*, 477 P.2d 489,

493 (Colo. App. 1970) (not published pursuant to C.A.R. 35(f)), on

the other hand, the trial court narrowed the geographic scope of an

overly broad noncompete provision, and the appellate court upheld

that judgment.

¶ 27    And in *Management Recruiters of Boulder, Inc. v. Miller*, 762

P.2d 763, 764 (Colo. App. 1988), the court considered a

nonsolicitation provision that prohibited the defendant from

contacting any "candidate or employer-client with whom the

[defendant] had contact with or access to."  The division upheld the

trial court's decision to "narrowly construe[]" the provision to only

11

bar contact with candidates or employer-clients with whom the defendant had "*actual* contact." *Id.* at 766.

¶ 28    In this case, the district court declined to blue pencil the overly broad nonsolicitation provision. Therefore, we do not need to broadly decide when and to what extent a Colorado trial court may blue pencil an overly broad noncompete or nonsolicitation provision. We address only the questions of (1) whether the agreement or the law of the case *required* the district court to blue pencil the nonsolicitation provision; and (2) assuming the court had no such obligation, whether the district court abused its discretion in declining to do so.

2.    The District Court Was Under No Obligation to Blue Pencil the Overly Broad Nonsolicitation Provision

¶ 29    In its opening brief, Bradsby contends that the severability section of the agreement obligated the district court to blue pencil the agreement to conform it to Colorado law. We disagree.

¶ 30    It is not the function of a court to write or rewrite contracts for parties to enable enforcement of a contract that, as written, violates the public policy of the state. *Bayly, Martin & Fay, Inc. v. Pickard*, 780 P.2d 1168, 1175 (Okla. 1989). While, under certain

12

circumstances, a court may exercise its discretion to blue pencil an otherwise offensive restrictive covenant, the trial court has broad discretion whether and when to exercise that authority. *Nat'l Graphics*, 681 P.2d at 547.

¶ 31    We squarely reject the proposition that contracting parties, by inclusion of language in a contract, may compel a court to blue pencil an agreement that violates the public policy of this state. Though Colorado law provides little guidance in this area, *Bayly, Martin & Fay*, 780 P.2d 1168, decided in a jurisdiction that permits trial courts to modify overly broad noncompete provisions, is instructive. In that case, the Oklahoma Supreme Court declined to modify (or require its trial courts to modify) overly broad noncompete provisions, even though the contracts at issue granted that authority, because doing so would require the court to rewrite an unlawful contract. *Id.* at 1175.

¶ 32    Several other courts have rejected the proposition that parties may delegate to the courts the responsibility to contract for them. In *Rector-Phillips-Morse, Inc. v. Vroman*, 489 S.W.2d 1, 4 (Ark. 1973), for example, the court considered a provision similar to the one in this case and stated: "We are firmly convinced that parties are not

entitled to make an agreement, as these litigants have tried to do, that they will be bound by whatever contract the courts may make for them at some time in the future."

¶ 33    Simply put, the court is not a party to the agreement, and the parties have no power or authority to enlist the court as their agent. Thus, parties to an employment or noncompete agreement cannot contractually obligate a court to blue pencil noncompete provisions that it determines are unreasonable.

¶ 34    Moreover, even if private parties could enlist a court to correct their contracts, the contract in this case does not do so. Bradsby argues in its opening brief that the severability provision in the agreement states that "if *any portion* of the Agreement is held invalid or unenforceable because of unreasonable overbreadth," the agreement will still be enforceable to the extent determined by the court. (Emphasis added.)  But as Herman correctly points out in her answer brief, that is *not* what the agreement says.  The agreement states:

> In the event that any portion of this Agreement
> shall be held unenforceable, it is agreed that
> the same shall not affect any other portions of
> this Agreement, and the remaining covenants
> and restrictions or portions thereof shall

remain in full force and effect; further, if the invalidity or unenforceability is due to the unreasonableness of the time or geographical area covered by a covenant and restriction, the covenants and restrictions shall nevertheless be effective for the period of time and for such area as may be determined to be reasonable by a court of competent jurisdiction.

¶ 35   As noted by the district court, any conceivable mandatory duty (which we reject) to blue pencil this contract is limited to correcting overbreadth in the agreement's geographic and temporal restrictions. Those restrictions are not at issue.

¶ 36   Apparently recognizing that its opening brief argument cannot be sustained based on the plain language of the agreement, Bradsby reframes its argument in its reply brief. There, it contends that notwithstanding the specific language of the severability provision quoted above, the provision, "read as a whole," demonstrates a "clear intent to cure any unreasonable overbreadth of the restrictive covenants and enforce them to the extent allowed." That is a weaker argument than Bradsby presented in its opening brief. Considering the provision as a whole, the fact that the severability provision specifically authorizes a court to modify the geographic and temporal restrictions suggests, if anything, that *only*

15

those two restrictions were intended to be subject to modification by a court. *Beeghly v. Mack*, 20 P.3d 610, 613 (Colo. 2001) ("[T]he inclusion of certain items implies the exclusion of others.").

¶ 37 Finally, like the district court, we do not interpret *Bradsby I*'s mandate to *require* the district court to blue pencil the agreement on remand; rather, we read *Bradsby I* to afford the district court discretion to determine *whether* to blue pencil the agreement, consistent with the discretion provided by our case law. *Nat'l Graphics*, 681 P.2d at 547.

¶ 38 In sum, contrary to Bradsby's argument, the district court violated neither the law of the case nor the mandate of *Bradsby I*. *See Thompson v. Catlin Ins. Co. (UK)*, 2018 CO 95, ¶¶ 21-22 (mandate rule); *Jones v. Samora*, 2016 COA 191, ¶ 47 (law of the case doctrine).

3. The District Court Did Not Abuse Its Discretion in Declining to Blue Pencil the Overly Broad Nonsolicitation Provision

¶ 39 We also reject Bradsby's argument that even if the court was not compelled to blue pencil the agreement, it abused its broad discretion in declining to do so.

16

¶ 40    We review a court's decision not to blue pencil a noncompete agreement to conform it to the requirements of the law for an abuse of discretion. *Nat'l Graphics*, 681 P.2d at 547. A court abuses its discretion when its decision is manifestly arbitrary, unfair, or unreasonable, or contrary to law. *People v. Jackson*, 2018 COA 79, ¶ 37.

¶ 41    Fundamentally, it is the obligation of a party who has, and wishes to protect, trade secrets to craft contractual provisions that do so without violating the important public policies of this state.[5] That responsibility does not fall on the shoulders of judges. *Rector-Phillips-Morse*, 489 S.W.2d at 4; *Bayly, Martin & Fay*, 780 P.2d at 1175.

---

[5] We note that protection for trade secrets is self-effectuating under the Colorado Uniform Trade Secrets Act, section 7-74-103, C.R.S. 2018. This statute protects (under the circumstances stated) trade secrets irrespective of whether the holder of the trade secrets also requires noncompete or nonsolicitation agreements. For this reason, and because the confidentiality and noncompete provisions remained effective throughout their terms, any contention that our conclusion here would permit Herman to engage in rampant abuse of Bradsby's trade secrets is unfounded.

¶ 42    Here, the district court gave substantial reasons why it declined to exercise its discretion to blue pencil the agreement. The district court

- cited the general Colorado public policy against noncompete provisions;

- based on the absence of relevant Colorado case law, reviewed authority in other jurisdictions counseling restraint in blue penciling parties' agreements, particularly where the overbreadth of the initial restriction renders it unfair;

- pointed out the significant overbreadth of the nonsolicitation provision; and

- concluded that "significant modification would be necessary to make it comport with the law."

¶ 43    Bradsby proposes three separate ways in which a court could blue pencil the nonsolicitation provision, which as written prohibits Herman from soliciting any person or entity previously contacted by Bradsby: (1) barring Herman only from soliciting individuals whom she had contacted while in Bradsby's employ; (2) barring Herman only from soliciting Bradsby clients; or (3) barring Herman only

from soliciting Bradsby clients whom she had contacted. The multiple blue pencil options supplied by Bradsby support the district court's observation that blue penciling would require "significant modification." The court would have to determine not only which provisions to delete, but also which provisions to add, essentially rewriting the nonsolicitation clause.

¶ 44    While we agree with Bradsby that *Bradsby I* concluded that the confidentiality provisions are not coterminous with the nonsolicitation provision, and therefore cannot render the nonsolicitation provision superfluous, the district court's other reasons for declining to blue pencil the agreement constitute sound reasons for the exercise of the court's discretion.

¶ 45    Accordingly, we reject Bradsby's argument that the district court abused its discretion.

### B.    The Jury Verdict That Herman Did Not Form a Competing Company Has Support in the Record

¶ 46    Bradsby next argues that the jury's verdict that Herman did not form a competing company in violation of the noncompete provision is not supported by the evidence and asks that we

"reverse the jury's verdict." Because there is record support for the jury's verdict, we reject this argument.

¶ 47    "Appellate courts are bound by a jury's findings and can only disturb a jury verdict if clearly erroneous." *Murphy v. Glenn*, 964 P.2d 581, 584 (Colo. App. 1998) (citation omitted). "It is within the jury's province alone to determine the weight of the evidence and the credibility of witnesses, and to draw all reasonable inferences of fact therefrom." *Id.* Therefore, "a jury's verdict will not be disturbed if there is any support for it in the record." *Id.*

¶ 48    The parties presented conflicting evidence to the jury as to whether Herman formed a competing company in violation of the noncompete provision. At bottom, Bradsby asks us to reweigh this conflicting evidence. We do not have the authority to do so. *Id.*

¶ 49    Herman testified that Touchstone was not primarily a recruiting company, that any recruiting work was undertaken outside the Restricted Area, and that Touchstone maintained a business address outside the Restricted Area. It was the jury's sole responsibility to determine whether this testimony was true.

## C.    As the Prevailing Party, Herman Is Entitled to Attorney Fees

¶ 50    Herman argues that she is the prevailing party because the court entered judgment in her favor as to both the noncompete and nonsolicitation claims.  We agree.

¶ 51    We review determinations of which party is the prevailing party under a fee-shifting provision for an abuse of discretion. *Anderson v. Pursell*, 244 P.3d 1188, 1193-94 (Colo. 2010).

¶ 52    Applying this standard, we first conclude that the district court's rationale cannot support its conclusion that Herman is not the prevailing party.  Second, we conclude that Herman is the prevailing party because she prevailed on both breach of contract claims litigated.  *Klun v. Klun*, 2019 CO 46, ¶ 31.

### 1.    The District Court's Determination That Herman Breached the Unlitigated Confidentiality Provision Cannot Support the Conclusion that Herman Is Not the Prevailing Party

¶ 53    The district court concluded that Herman was not the prevailing party because,

> while [Herman] may not legally have breached those relevant provisions of her contract litigated in this case, she nevertheless breached her obligations not to use [Bradsby's] information for her own benefit.  Thus, she cannot be considered the 'prevailing party'

> under *Spencer*'s reasoning and is not entitled
> to her attorney fees.

¶ 54    For several reasons, we cannot sustain the district court's attorney fee order on this basis. First, Bradsby did not allege in its complaint that Herman had violated the confidentiality provision. Second, one or both of the parties demanded a jury trial on all issues pleaded. Third, and most importantly, the question of whether the confidentiality provision was violated was never tried before the jury or litigated in any sense (at least until the court made its own finding). Finally, Herman had no opportunity to defend herself against this allegation.

¶ 55    The district court did not cite, and we have not found, any authority authorizing a court to deny recovery under a prevailing party attorney fee clause when the court finds contractual violations not alleged or tried in the case. Thus, despite the significant discretion afforded the district court in determining which party is the prevailing party, *Whiting-Turner Contracting Co. v. Guarantee Co. of N. Am. USA*, 2019 COA 44, ¶ 56, the district court's finding that Herman violated the unlitigated confidentiality

provision cannot sustain its conclusion that Herman was not the prevailing party.

### 2. Herman is the Prevailing Party

¶ 56    "[W]here a claim exists for a violation of a contractual obligation, the party in whose favor the decision or verdict on liability is rendered is the prevailing party for purposes of awarding attorney fees." *Dennis I. Spencer Contractor, Inc. v. City of Aurora,* 884 P.2d 326, 327 (Colo. 1994).

¶ 57    Bradsby alleged that Herman breached two provisions of the agreement: the noncompete provision and the nonsolicitation provision. Herman indisputably prevailed on each of these claims, as evidenced by the judgment entered in her favor (and which we affirm). Thus, she is the prevailing party.

¶ 58    Relying on *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230-31 (Colo. 2004), Bradsby argues Herman is not the prevailing party because Bradsby prevailed on the "significant issue" of whether Bradsby held trade secrets and obtained "some of the benefits sought by the litigation." *Archer*, however, is inapposite for multiple reasons.

23

¶ 59    First, as two divisions of this court have opined, "*Spencer* articulated the test for a 'prevailing party' under a contract, whereas *Archer* was a tort case and involved a cost award to a prevailing party under C.R.C.P. 54(d)." *Extreme Constr. Co. v. RCG Glenwood, LLC*, 2012 COA 220, ¶ 55 (citing *Pastrana v. Hudock*, 140 P.3d 188, 190-91 (Colo. App. 2006)).  Second, in *Archer*, "either party could arguably [have been] considered the 'prevailing party'" because each party prevailed on one or more of the claims at issue.  90 P.3d at 231.  That is not the case here because Bradsby did not prevail on either breach of contract claim.[6]

¶ 60    Even if we were to apply the *Archer* test, Bradsby did not obtain "some of the benefits sought by the litigation."  *Id.* at 230. Bradsby did not sue Herman to obtain a ruling that it held trade

---

[6] *Anderson v. Pursell*, 244 P.3d 1188 (Colo. 2010), does not require a different result.  Although the court in that case applied the "significant issue" test articulated in *Archer* to determine which party was the prevailing party under a fee-shifting agreement, that case involved an application for adjudication of water rights, rather than a breach of contract claim.  *Id.* at 1193-95.  Further, the applicant in *Anderson* received some of the water rights requested, but the water court denied other portions of the application, so there was no clear-cut prevailing party.  *Id.* at 1192.

secrets. It brought the litigation to enforce the noncompete and nonsolicitation provisions and did not obtain the relief sought.

¶ 61 In addition, and contrary to Bradsby's position, the fact that the jury entered a verdict in Bradsby's favor as to the nonsolicitation claim is meaningless when that claim ultimately failed, and judgment on that claim was rendered *in Herman's favor*.

¶ 62 Bradsby's final contention is that Herman is judicially estopped from relying on the fee-shifting provision because Bradsby argued at various points that the entire agreement was void. To support this contention, Bradsby relies on *New Hampshire v. Maine*, which states that when "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." 532 U.S. 742, 749 (2001) (citation omitted).

¶ 63 Bradsby's argument fails because Herman did not "succeed[] in maintaining that position." *Id.* The court only ruled that the nonsolicitation provision was unenforceable, not that any other portions of the agreement were unenforceable. Bradsby does not contend, and we do not conclude, that the unenforceability of the

nonsolicitation provision alone renders the fee-shifting provision unenforceable.

¶ 64 Ordinarily, given the discretion afforded the trial court in determining which party is the prevailing party, we would remand to the district court for a prevailing party determination. *Spencer*, 884 P.2d at 328 n.6. But here, applying *Spencer* and considering that Herman indisputably prevailed on both claims, the only determination on remand that an appellate court could affirm is a determination that Herman is the prevailing party. Given this, it would be a waste of judicial resources to remand to the district court for a prevailing party determination.

¶ 65 Because we affirm the district court's merits judgment and conclude that Herman was the prevailing party, we grant Herman's request for appellate attorney fees and costs under the fee-shifting agreement and C.A.R. 39.

### III.  Conclusion

¶ 66 The merits judgment in favor of Herman is affirmed. The district court's order denying attorney fees to Herman is reversed. On remand the district court is directed to enter an order awarding Herman reasonable attorney fees in the amount previously

26

requested (because Bradsby did not contest the reasonableness of that amount) plus reasonable appellate attorney fees and costs, as determined by the district court.

JUDGE DUNN and JUDGE NAVARRO concur.