**O. Shannon HAUSER d/b/a Contract Services Group, a sole proprietorship f/k/a Contract Management Services, a sole proprietorship, Plaintiff–Appellee,**

v.

**ROSE HEALTH CARE SYSTEMS, a Colorado nonprofit corporation, Defendant–Appellant.**

No. 91CA1630.

Colorado Court of Appeals, Div. I.

Feb. 25, 1993.

Rehearing Denied April 1, 1993.

Certiorari Denied Aug. 30, 1993.

Fairfield and Woods, P.C., James L. Stone, John M. Tanner, Denver, Miller, Nash, Wiener, Hager & Carlsen, James R. Hermsen, Seattle, WA, for plaintiff-appellee.

Brownstein Hyatt Farber & Strickland, P.C., Stanley L. Garnett, Anne M. Murphy, Denver, for defendant-appellant.

Opinion by Judge RULAND.

Defendant, Rose Health Care Systems (Rose), appeals from a partial summary judgment determining that it entered into a binding contract with plaintiff, O. Shannon Hauser, and from a subsequent judgment entered upon a jury verdict awarding damages to plaintiff for breach of the contract. We affirm.

Plaintiff was engaged in the business of consulting and contract negotiation. In July of 1989, plaintiff entered into a contract with the chief financial officer of Rose. This contract authorized plaintiff to renegotiate existing agreements Rose had with product and service suppliers. The chief financial officer was particularly concerned about an existing contract for computer services with Shared Medical Services (SMS).

Plaintiff's contract provided, among other things, that he would receive 33 percent of the savings Rose realized from the contracts that he successfully renegotiated.

Plaintiff negotiated with SMS on behalf of Rose in July and August of 1989, culminating with the signing of new contracts pertaining to computer services. Plaintiff then generated a spreadsheet which calculated Rose's savings under the renegotiated contracts through 1995 at an estimated $10 million. On November 1, 1989, plaintiff submitted an invoice to the president of Rose, claiming entitlement to $196,783 as payment for the third quarter of 1989.

In response, the president of Rose corresponded with plaintiff indicating that plaintiff's contract with Rose was "unacceptable" and that there was "no basis" for his invoice. Rose therefore refused to make payment, and plaintiff commenced this action.

The trial court granted plaintiff's motion for partial summary judgment concerning the validity of his contract with Rose, and the case proceeded to trial on the issue of damages. Based upon the record presented in connection with the motion, the court concluded that Rose ratified the contract with plaintiff. Subsequently, the jury awarded plaintiff $850,000 in damages.

I.

Rose first contends that the trial court erred in granting partial summary judgment on the validity of the contract in favor of plaintiff on various grounds.

The parties agree upon the applicable standard of review. Specifically, summary judgment may be granted only if the pleadings, admissions, depositions, answers to interrogatories, and affidavits establish that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Werkmeister v. Robinson Dairy, Inc.*, 669 P.2d 1042 (Colo.App.1983). In a proper case, a trial court may grant a partial summary judgment as to the undisputed material facts and reserve the disputed facts for subsequent proceedings. *City of Westminster v. Church*, 167 Colo. 1, 445 P.2d 52 (1968); C.R.C.P. 56(d).

All doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party. *Jones v. Dressel*, 623 P.2d 370 (Colo.1981). However, a "genuine issue" cannot be raised simply by means of argument. Rather, once the movant has made a convincing showing that genuine issues of fact are lacking, the non-moving party must demonstrate by admissible facts that a real controversy exists. *Sullivan v. Davis*, 172 Colo. 490, 474 P.2d 218 (1970).

## A

Initially, Rose contends that the contract lacked mutuality of consideration because plaintiff was not obligated to perform any specific service to Rose. Therefore, Rose argues, the trial court erred in ruling that the contract was enforceable under the ratification doctrine. We disagree.

If one party to an executory contract has no legally enforceable obligations or an unlimited right to determine the nature and extent of his performance, the contract lacks mutuality of consideration and may be unenforceable. *See Howard v. Beavers,* 128 Colo. 541, 264 P.2d 858 (1953). However, if the contract has been performed by one party and the claim is for compensation due for performance, lack of mutuality is immaterial. *Fisk Mining & Milling Co. v. Reed,* 32 Colo. 506, 77 P. 240 (1903).

Here, one provision of the contract provided that plaintiff would be "free to exercise [his] own business judgment as to the Contracts and the Proposals [he] will seek to negotiate." However, even if we assume that this provision nullifies the requisite mutuality for an executory contract, because plaintiff performed the services contemplated by the agreement, he is entitled to recover the compensation due for his performance. *See Fisk Mining & Milling Co. v. Reed, supra.*

## B

Rose next asserts that the contract was impermissibly vague and contemplated further agreements between plaintiff and Rose to determine which contracts plaintiff would negotiate and how his payment would be calculated. Again, we disagree.

Rose relies upon the following paragraph of the contract relating to plaintiff's compensation:

> *Contracts.* [Rose] will pay [plaintiff] a fee equal to thirty-three percent (33%) of all cost savings to [Rose] implemented by amendments or modifications to the Contracts. 'Cost Savings' shall mean the product of (a) the remaining life of the

contract expressed in years or fractions of years, times (b) the difference between (i) the annualized cost to [Rose] under the Contract and (ii) the annualized cost to [Rose] under the contract as amended or renegotiated. [Rose] agrees to pay the applicable fee to [plaintiff] in quarterly payments at the end of each quarter in which cost saving is realized by [Rose] over the term of the Contract, unless otherwise agreed by mutual consent of the parties.

A contract is not enforceable if it appears that further negotiations are required to work out essential terms. *Pierce v. Marland Oil Co.,* 86 Colo. 59, 278 P. 804 (1929). As pertinent here, however, to determine whether a contract is lacking in essential terms the language of the contract must be given its plain and generally accepted meaning and reference must be made to all provisions of the agreement. *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371 (Colo.1990). And, the fact that the parties disagree as to the interpretation of a contract, standing alone, does not render the contract fatally vague. *See In re May,* 756 P.2d 362 (Colo.1988).

In our view, the plain language of the contract requires Rose to pay plaintiff 33 percent of the difference in the cost savings realized by Rose under the renegotiated contracts. The affidavits and deposition testimony presented by Rose, rather than establishing a genuine issue as to the intent of the parties, demonstrate the difficulty in computing the amount of savings. The resultant difference of opinion between plaintiff and Rose as to the amount of the cost savings, however, is not sufficient to render the contract unenforceable. *See In re May, supra.*

## C

Rose finally contends that the trial court erred for various reasons in concluding that Rose "ratified" plaintiff's contract. Rose argues that the chief financial officer was instructed that he had no authority to enter into the agreement with plaintiff. Conversely, Rose argues that it did not

have complete knowledge of all of the material facts relating to the transaction until it had repudiated the contract. Moreover, Rose contends that it had no alternative but to "accept" the benefits of plaintiff's negotiations because it had already signed the new contract with SMS. Finally, Rose contends that, under its by-laws, the contract could not have been ratified without a vote of the Board of Trustees. We find no merit in any of Rose's contentions.

■■■■■ Although an agent may lack actual authority at the time of contracting on behalf of a principal, the principal may ratify the contract, and thereby become obligated to the same extent as if the agent had originally been authorized to execute the contract, by accepting the benefits of the contract. *M.S.P. Industries, Inc. v. Diversified Mortgage Services, Inc.*, 777 P.2d 237 (Colo.App.1989). In order to ratify the contract, the principal must have full knowledge of all the material facts of the transaction prior to ratification and also accept the benefits thereof. *See Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508 (Colo.App.1986).

■■■■■ Here, the deposition transcripts submitted to the trial court at the time it considered plaintiff's motion for summary judgment indicate that the president of Rose specifically authorized the chief financial officer to enter into an agreement with plaintiff to renegotiate certain contracts following a June 30, 1989, meeting. Part of the resultant contract was drafted by Rose's attorneys.

The president's deposition further reveals that he was aware that plaintiff was negotiating with SMS on behalf of Rose for several months. The president signed checks to reimburse plaintiff for expenses, and he knew plaintiff was to be compensated. Although he did not see a copy of plaintiff's contract, the president learned in "late July or early August" that plaintiff was to receive a 33 percent contingency fee for his services.

Plaintiff's contract with Rose was reviewed by the executive vice-president of Rose and the chief executive officer of Rose's sister corporation in late July or early August while the president was on vacation. Notwithstanding this review and the fact that Rose signed contracts negotiated by plaintiff after August 1, Rose did not attempt to repudiate the contact until the president had reviewed, and found unacceptable, plaintiff's invoice for payment.

■■■■■ Based upon these undisputed facts, the trial court did not err in concluding that no genuine issue of any material fact existed as to Rose's ratification of plaintiff's contract. In sum, Rose had knowledge of the existence of plaintiff's contract and compensation *prior* to accepting certain of the benefits of the contract plaintiff renegotiated on its behalf. *See M.S.P. Industries, Inc. v. Diversified Mortgage Services, Inc., supra.* Even if we assume that Rose's by-laws required action by the Board of Trustees to ratify the contract, the president's knowledge of the material facts may be imputed to the Board. *See Stortroen v. Beneficial Finance Co.*, 736 P.2d 391 (Colo.1987) (notice to agent obtained in transaction within the scope of agency may be imputed to the principal). Thus, the Board's failure to act formally on the contract does not preclude a determination that the contract was ratified.

## II

Rose next contends that the trial court erred in admitting certain exhibits offered in support of plaintiff's damage claim because in its view the documents constitute inadmissible hearsay. Rose did not challenge in the trial court either the authenticity of any of the exhibits or the accuracy of the contents. We find no merit in any of Rose's contentions.

### A

■■■■■ One exhibit was prepared by SMS for Rose relative to the installation estimates for certain technology. The exhibit was initialed by the chief financial officer of Rose and by an employee of SMS. Rose claims that the trial court erred in admitting this document for the accuracy of the quoted estimates as a business record un-

der CRE 803(6). We need not address this contention.

Our review of the record reflects that the document was not admitted for the accuracy of the quoted estimates. Instead, the jury was specifically instructed that "this exhibit is not being admitted for the truth of the matter asserted in the exhibit." Counsel for Rose confirmed for the court that no additional instruction to the jury was required. Hence, Rose may not now claim error in admission of the exhibit.

**B**

Rose next contends that the trial court erred in admitting a letter from SMS dated in June of 1989 containing a proposal to Rose for the installation of a clinical system software program. The document was admitted as a means of assisting in the determination of plaintiff's damages. We perceive no error in the court's ruling.

■ The determination of the sufficiency of a foundation for the admission of evidence is a matter within the sound discretion of the trial court, and its ruling may not be disturbed upon review absent a clear abuse of that discretion. *Pyles–Knutzen v. Board of County Commissioners*, 781 P.2d 164 (Colo.App.1989).

■ As pertinent here, written hearsay statements which are otherwise inadmissible may be admitted as a business record under CRE 803(6) to prove the accuracy of the statements contained therein if the requisite foundation is established so as to indicate the "trustworthiness" of the information in the document. To establish that foundation, it must appear that the document was made near the time of the information recorded in it by a person with knowledge of the contents. In addition, the person who prepared the document must have done so as part of a regularly conducted business activity. Finally, it must appear that it was a regular practice of the business that transmitted the document to generate it or of the business that received it to maintain this type of document in the course of that business activity. *See Schmutz v. Bolles*, 800 P.2d 1307 (Colo.1990).

■ As a result, and contrary to Rose's contention, it is unnecessary to establish that the document was prepared by an employee of Rose before it may be admitted. *See United States v. Keplinger*, 776 F.2d 678 (7th Cir.1985) (letters created by one business but regularly received, maintained, and relied upon by another may be admitted as business records of the latter).

Here, the chief financial officer testified that the proposal was received in the ordinary course of Rose's business, that this was the type of proposal that Rose received from SMS in the business dealings between the two companies, and that at no time did SMS inform Rose that the proposal was not accurate.

The SMS employee who prepared and signed the proposal obviously had knowledge of its content, and the proposal is dated. Indeed, the record reflects that negotiations which ensued after the date of the proposal culminated in a written contract between Rose and SMS. In addition, it is undisputed that SMS deals in the sale of software as a regular business activity. Further, there is nothing in the record to suggest that the proposals are not retained by Rose in the course of its business negotiations with SMS. Thus, we conclude that the trial court did not abuse its discretion in determining that a proper foundation was established.

**C**

The final documents challenged by Rose consist of price quotations from Digital Equipment Corporation for various items. One set of price quotations was addressed by letter to plaintiff and the second set of the same quotations was transmitted by FAX cover sheet. Each quotation indicates specifically that it is for Rose Medical Center, and copies were received by it. However, Rose maintains that plaintiff's foundation was lacking in that plaintiff failed to demonstrate that the documents were generated as part of a regularly conducted business activity by Digital. We disagree.

■ While statements by a third party contained in a business record have not been accorded the presumption of accuracy

in some cases that attaches to a statement made in the regular course of business, *see United States v. Snyder*, 787 F.2d 1429 (10th Cir.1986) (third party statements in a police report inadmissible as a business record), when information is provided as a part of a business relationship between a business and outsiders, the records may be admissible. This is particularly so if the information was provided at the request of the business and the document was of a type typically relied upon by that business in making decisions. *See Schmutz v. Bolles, supra.*

■ The fact that plaintiff and Rose rely upon these types of documents in formulating business decisions is uncontroverted. Conversely, and contrary to Rose's contention, the documents themselves reveal that such were prepared as part of a regularly conducted business activity of Digital, namely, the sale of service and products and relate to a business activity of Rose—the purchase of such items.

Thus, we find no abuse of discretion in the trial court's decision to admit the documents. *See Saks International, Inc. v. M/V Export Champion*, 817 F.2d 1011 (2d Cir.1987) (addressing "tallies" prepared by stevedores admitted to establish the amount of cargo loaded on a vessel); *United States v. Grossman*, 614 F.2d 295 (1st Cir.1980) (addressing manufacturer's price catalogue admitted to establish retail prices); *United States v. Flom*, 558 F.2d 1179 (5th Cir.1977) (addressing invoices received by manufacturer from another company).

### III

Next, Rose asserts that the jury's damages award was an improper "compromise" verdict because it was inconsistent with the evidence presented at trial. Therefore, Rose contends, it is entitled to a new trial.

■ The amount of damages to be awarded is a matter within the sole province of the jury and may not be disturbed unless it is completely without support in the record. *Smith v. Hoyer*, 697 P.2d 761 (Colo.App.1984).

■ The amount of damages awarded may be an approximation, provided that the fact of damages is certain and that the plaintiff introduces some evidence which is sufficient to permit a reasonable estimation of damages. *See Pomeraz v. McDonald's Corp.*, 843 P.2d 1378 (Colo.1993); *see also Tull v. Gundersons, Inc.*, 709 P.2d 940 (Colo.1985) (where damages claimed were based upon lost profits, plaintiff's recovery was not barred because such profits could not be calculated with "mathematical certainty").

■ Here, plaintiff presented expert testimony concerning 17 separate transactions he negotiated with SMS on behalf of Rose, totalling $2,983,598.50 in savings to Rose, for which he claimed entitlement to $984,587.54 pursuant to the terms of his contract. Each of the transactional savings was detailed on a spreadsheet which was admitted as an exhibit at trial. Plaintiff's expert testified that these figures rested upon certain factual assumptions, such as average monthly expenditures before and after plaintiff renegotiated the contracts. These estimates were compiled from data for a seven to nine month period and extrapolated over the period until the trial.

Rose was permitted to cross-examine plaintiff's expert on the accuracy of these factual assumptions. In addition, Rose presented testimony from an expert, disputing the accuracy of, among other things, the estimated expenditures.

By disagreeing with certain of plaintiff's factual assumptions and the accuracy of his estimations, the jury could reasonably have calculated his damages at less than the $984,587.54 figure testified to by his expert. Therefore, in our view there was adequate support in the record for the jury's verdict. *Smith v. Hoyer, supra.*

We have considered and find no merit in Rose's other contentions for reversal of the judgment.

The judgment is affirmed.

METZGER and BRIGGS, JJ., concur.