2012 OK 6

**Gina A. COWLEY, Individually, Plaintiff/Appellant,**

v.

**SEYMOUR LAW FIRM, R. Thomas Seymour, Individually and as Partner, agent, servant or employee of Seymour Law Firm, and Scott A. Graham, Individually and as agent, servant or employee of Seymour Law Firm, Defendants/Appellees.**

No. 108,620.

Supreme Court of Oklahoma.

Jan. 31, 2012.

As Corrected Feb. 3, 2012.

Rehearing Denied Dec. 11, 2012.

Gina A. Cowley, pro se, Broken Arrow, Oklahoma, plaintiff/appellant.

R. Thomas Seymour, Seymour Law Firm, Tulsa, Oklahoma, for defendants/appellees.

WINCHESTER, J.

¶ 1 The issue before this Court is whether the expiration of an attorney lien prohibits a plaintiff's lawyer from suing her co-counsel for breach of contract over the distribution of attorney fees from a settlement of the underlying case. We hold that the one-year statute of limitations found in 5 O.S.2011, § 8, does not preclude a lawsuit arising over a contract dispute between plaintiff's lawyers.

¶ 2 In February 2002, Arvin McGee, Jr., contacted Gina Cowley, the appellant, to represent him in pursuing claims against multiple defendants in a civil matter for wrongful identification and conviction of kidnapping and rape. After his freedom from prison was secured by the Oklahoma Indigent Defense System, Ms. Cowley entered into an attorney fee contract with Mr. McGee on April 9, 2002. Since she had been licensed in April 2001, she found an experienced law

firm and contracted with them. Her responsibilities included putting the case together and leading the case. The initial complaint was filed in the Federal District Court for the Northern District of Oklahoma. She claimed an attorney lien and demanded a jury trial.

¶3 In mid to late November of 2003, her client became dissatisfied with the associated firm, so Ms. Cowley took the advice of a lawyer with whom she had worked before her admission to the bar, and spoke with R. Thomas Seymour, one of the appellees, who assisted her with letters to terminate the first law firm, and the Seymour law firm entered the case after Christmas of 2003. But by late summer or early fall of 2004, she experienced immense personal family problems exacerbated by the enormous professional stress of being a young lawyer. During this time the relationship between Ms. Cowley and the Seymour firm became very strained. Mr. Seymour assured her that she had nothing to fear and that the firm would assist her, but she alleges his firm pursued a course of action against her and to her detriment, even expressing he would have Ms. Cowley's bar card. After she was faced with several bar complaints, she resigned her membership in the Oklahoma Bar Association pending discipline.

¶4 Although Ms. Cowley had a lien for the work done on the McGee matter, and the lien had not been released, a settlement of the case with the City of Tulsa took place in early 2006 and the last distribution of the settlement money took place in August of 2007. She was never paid for any of the work she did. When she was deposed by the appellees, she was asked why she did not believe she had abandoned Mr. McGee and she replied that she left him in good hands, that she had gotten him to Mr. Seymour. In the McGee case, the jury returned a verdict for $14.5 million and a settlement was effected for $12,250,000.00. Ms. Cowley received none of that settlement.

¶5 The Journal Entry of Judgment in the cause now before this Court found that § 8 of title 5 governed the action, that the plaintiff (appellant) failed to follow the procedure established by that statute, that the defendants (appellees) were awarded summary judgment against the plaintiff on that issue, that the court did not reach any of the defendants' other requested grounds to grant summary judgment and that the ruling disposed of all claims between the parties. Our construction of § 8 requires that the judgment be reversed. Because summary judgment was based on § 8, other arguments found in the briefs of waiver of attorney fee, repudiation of contract, breach of contract, public policy, client's payment of attorney fees, and other arguments outside of the construction of § 8 are to be determined on remand.

¶6 In determining whether summary judgment is appropriate a trial court considers factual matters. However, the ultimate decision involves purely legal determinations, that is, whether a party is entitled to judgment as a matter of law because there are no material disputed factual questions. Since the decision involves purely legal determinations, the appellate standard of review is *de novo*. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. *Carmichael v. Beller*, 1996 OK 48, ¶2, 914 P.2d 1051, 1053.

¶7 In December 2003, plaintiff/appellant, Gina A. Cowley, entered into a co-counsel agreement with the defendants/appellees, the Seymour Law Firm, R. Thomas Seymour and Scott A. Graham, which the appellees state was dated December 29, 2003. That contract details how attorney fees would be divided between the appellant and the appellees. Because the parties both admit that there was a contract between them, the fact of a contract is not under dispute. But we are not addressing the contract dispute, only the summary judgment decided by the district court that was wholly based on § 8 of title 5.

¶8 The appellees were granted a motion for summary judgment against the appellant after the trial court found that Ms. Cowley failed to follow the procedure established by 5 O.S.2011, § 8. That statute provides:

"Should the party to any action or proposed action whose interest is adverse to the client contracting with an attorney settle or compromise the cause of action,

claim or judgment wherein any lien perfected under Sections 6 and 7 of this title is involved and such settlement or compromise is made without the consent of the attorney holding such lien, such adverse party shall thereupon become liable to such attorney for the fee that was due or would have become due under a contract of employment but for the settlement. After judgment in any court of record, the attorney's lien, provided for herein may also be effective against the judgment debtor upon endorsement of the words 'subject to the attorney's lien in favor of [insert name]' on the judgment. An attorney may enforce any lien provided for by this act in any court of competent jurisdiction by action filed within one (1) year after the attorney becomes aware of such compromise or payment of such judgment, or judgment may be rendered on motion in the case in the court in which the suit was brought."

¶ 9 The first sentence refers to an attorney's client who has a claim against another party. That attorney may claim a lien against any judgment or settlement in the action. The lien protects the attorney in the event a settlement or compromise is reached with the adverse party and without the consent of the attorney holding the lien. That adverse party becomes liable for the fee due under the contract of employment, whether by settlement, compromise, or judgment. The attorney may enforce the lien in a court of competent jurisdiction, or even by motion in the case where the suit was brought.

¶ 10 Early case law is clear on this issue. *Callahan v. Cowley & Riddle*, 1926 OK 230, ¶ 1[1], 245 P. 48, 49–50, which construes the previous codification of this statute, Comp.St.1921, § 4102, explicitly answers this question:

"Neither expressly nor by implication do said statutes modify, abrogate or in any wise affect the common-law rights of the attorney against the client under his contract of employment. Any action by the attorney against the client would be based upon, as the instant case is, the contract of employment. Any action against the adverse party would be based upon said section 4102, by which also the contract furnishes the measure of the attorney's recovery."

We fail to see why this statute has been applied in this case to a contract with co-counsel, the appellees. The appellees were certainly not adverse parties to their own client, who was also the client of the appellant. If the appellant had a valid attorney's lien, it would have been against the adverse party. The statute of limitations may have run against enforcement of the lien against that adverse party, but the breach of a contract for the division of attorneys' fees between the appellant and the appellees has no relationship at all to a lien enforceable against the adverse party in the underlying cause. The fact that all of the settlement was paid to the appellant's former client and to appellant's co-counsel would not have prevented an action against the judgment debtor had the appellant filed within one year. Neither the appellees nor the client was a judgment debtor.

¶ 11 It appears that the settlement funds were treated in the district court below as though the lien followed the funds paid to the client and then to the appellees. It didn't. This statute prevents a settlement between the parties to a lawsuit in an attempt to circumvent payment of attorney fees. The statute is worded in a way that makes the debtor responsible for the unpaid fees of the creditor's attorney who has properly perfected the attorney's lien. The appellees were not the debtors in the original lawsuit.

¶ 12 Accordingly, this case must be reversed to determine the contract issue and any other issues upon which the appellant's claim for a division of attorney fees is based. Pursuant to our construction of 5 O.S.2011, § 8, the statute has no application to preclude the appellant from proceeding with her claim for a share of attorney fees paid to the appellees.

REVERSED AND REMANDED.

CONCUR: TAYLOR, C.J., COLBERT, V.C.J., WATT, WINCHESTER, EDMONDSON, REIF, COMBS, GURICH, JJ.

NOT PARTICIPATING: KAUGER, J.