22CA2186 & 23CA0663 Duran v Montoya 06-27-2024 COLORADO COURT OF APPEALS Court of Appeals Nos. 22CA2186 & 23CA0663 Larimer County District Court No. 20CV30843 Honorable Joseph D. Findley, Judge Joseph Duran, Plaintiff-Appellee, v. Jaclyn Montoya, John Kosmicki, and Kosmicki Investment Services, LLC, Defendants-Appellants. JUDGMENT AND ORDERS AFFIRMED Division V Opinion by JUDGE BROWN Johnson and Taubman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced June 27, 2024 Randall J. Paulsen & Associates P.C., Randall J. Paulsen, Lafayette, Colorado, for Plaintiff-Appellee Peters Schulte Odil & Wallshein LLC, Jennifer Lynn Peters, Nathaniel Wallshein, Loveland, Colorado, for Defendants-Appellants *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Defendants, Kosmicki Investment Services, LLC (KIS), Jaclyn Montoya, and John Kosmicki, appeal the jury verdicts entered in favor of plaintiff, Joseph Duran. Defendants also appeal the district court’s awards of costs and prejudgment interest. We affirm. I. Background and Procedural History ¶ 2 KIS is an independent financial services firm, originally formed by Kosmicki in 1997. Montoya began working for the company in 2006 and became a member in 2019. In September 2018, Duran joined KIS. ¶ 3 On September 1, 2020, Montoya sent Duran a letter with the subject line “Employment Relationship with Kosmicki Investment Services, LLC,” stating that Duran’s “at-will employment” was terminated effective August 21. Attached to the termination letter was a memo defendants characterized as a “draft Employment Offer,” which was titled “Payout to [Duran] for the first 12 months” and included terms regarding Duran’s expected business generation and the parties’ sharing of expenses and commissions. ¶ 4 In December 2020, Duran sued defendants, asserting claims for (1) breach of contract against Montoya and Kosmicki based on a 
2 violation of an alleged partnership agreement;
1 (2) breach of fiduciary duty against Montoya and Kosmicki; and (3) liability arising from agency against KIS. Duran alleged that he had joined KIS as a partner and had formed an oral partnership with Montoya and Kosmicki. He further alleged that he, Montoya, and Kosmicki had agreed to equally divide profits, commissions, and expenses beginning a year after he joined KIS. He claimed that Montoya and Kosmicki breached the partnership agreement by denying that a partnership had ever been formed and terminating him as an at-will employee. And he claimed that he suffered damages because of the breach, including the value of unpaid and deferred commissions “wrongfully withheld by the [d]efendants.” ¶ 5 Defendants denied Duran’s allegations, claiming that Duran was always an at-will employee and never a partner. Defendants filed counterclaims for (1) declaratory judgment; (2) mandatory injunction; (3) conversion; (4) civil theft; and (5) unjust enrichment, 1 Duran originally filed a breach of contract claim against all three defendants based on a violation of the alleged partnership agreement, but by the time of trial, he asserted that claim only against Montoya and Kosmicki individually. 
3 premised on their allegation that Duran continued to receive funds he was not entitled to after his termination. ¶ 6 Duran amended his complaint in August 2021, adding two alternative claims against KIS for failure to pay wages in the event a jury determined he had been an at-will employee. ¶ 7 A five-day jury trial began on March 7, 2022. During trial, Duran withdrew his claim for breach of fiduciary duty against Montoya and Kosmicki and his claim for liability based on agency against KIS. As reflected in the arguments and evidence presented at trial, Duran’s remaining claims against Montoya and Kosmicki included an alleged breach of their agreement that when Kosmicki turned seventy, Montoya would split her trail commissions
2 equally with Duran for a period of five years. On the third day of trial, 2 The parties do not agree on the definition of trail commissions, and we are unable to discern from the record precisely what trail commissions are in the context of this case. At oral argument, counsel for Duran represented that trail commissions are earned but deferred compensation, not future income of the partnership, although he acknowledged that certain future conditions must be met for the commissions to be paid. Counsel for defendants represented that trail commissions are future income, not earned but deferred compensation, which are paid only if certain conditions are met. Our disposition does not require that we resolve this dispute. 
4 defendants moved for a directed verdict under C.R.C.P. 50 on Duran’s remaining claims. The district court directed a verdict against Duran on his two wage-based claims against KIS but denied defendants’ motion as to the breach of contract claim. ¶ 8 The jury returned a verdict in favor of Duran on his breach of contract claim against Montoya and Kosmicki and awarded him $477,952.50 in damages. The jury also found against defendants on their counterclaims of conversion and civil theft.
3 ¶ 9 After trial, defendants moved for judgment on their remaining counterclaims. The court issued a written order declaring defendants’ counterclaims for declaratory judgment and mandatory injunction moot in light of the jury’s verdict. But the court determined that it was unjust for Duran to retain trail commissions generated after the partnership was dissolved. The court found that the partnership was dissolved when the defendants claimed to have terminated Duran’s employment. After a damages hearing, the 3 We note that the jury verdict only identifies Montoya and Kosmicki as the defendants who brought the counterclaims, but the district court’s final judgment was entered against all three defendants on their counterclaims. 
5 court determined that Duran owed defendants $2,396.99 on their claim for unjust enrichment. ¶ 10 Defendants filed a post-trial motion for a judgment notwithstanding the verdict (JNOV) or a new trial under C.R.C.P. 59, arguing that a partner has a statutory right to dissociate for any reason and that the act of dissociation could not form the basis of a breach of contract claim. The court denied the motion. ¶ 11 Following a hearing, the court declared Duran the prevailing party and awarded him a total of $20,594.09 in costs. The court also awarded Duran prejudgment interest of $61,079.48, calculated from August 21, 2020. All told, the court entered judgment (1) in favor of Duran and against Montoya and Kosmicki in the amount of $559,626.07, and (2) in favor of defendants and against Duran in the amount of $2,396.99. II. Challenge to the Existence of an Oral Partnership ¶ 12 On appeal, defendants contend that no oral partnership was formed because Duran did not make a capital contribution as required by statute. We disagree. 
6 A. Standard of Review ¶ 13 Defendants raise both legal and factual issues regarding whether a partnership existed. To the extent defendants’ arguments require us to interpret the partnership statute to determine what is required to form a partnership, we do so de novo. See Educhildren LLC v. Cnty. of Douglas Bd. of Equalization, 2023 CO 29, ¶ 27. ¶ 14 But because the jury found that Montoya and Kosmicki breached a partnership agreement it also necessarily — albeit implicitly — found that a partnership was formed. To the extent defendants challenge the sufficiency of the evidence that a partnership existed, see Fisher v. State Farm Mut. Auto. Ins. Co., 2015 COA 57, ¶¶ 37-40 (construing an argument around disputed factual issues as a challenge to the sufficiency of evidence supporting a jury’s verdict), aff’d, 2018 CO 39, we “may not disturb the jury’s verdict unless it is clearly erroneous,” Ovation Plumbing, Inc. v. Furton, 33 P.3d 1221, 1225 (Colo. App. 2001). ¶ 15 When reviewing a sufficiency challenge, we must view the evidence in the light most favorable to the prevailing party and determine whether the evidence is sufficient to support the verdict. 
7 Fisher, ¶ 40. It is the sole province of the jury to determine the weight of the evidence and the credibility of the witnesses and to draw all reasonable inferences from them. See Murphy v. Glenn, 964 P.2d 581, 584 (Colo. App. 1998). We will not disturb a jury’s verdict if there is any support in the record for it. See id. B. Formation of a Partnership ¶ 16 Under section 7-64-202(1), C.R.S. 2023, “the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership.” The district court instructed the jury on this definition. ¶ 17 As an initial matter, defendants contend there was insufficient evidence to show that the parties agreed to carry on a “separate” business for profit beyond the financial planning business KIS was already conducting. Defendants provide no authority for their assertion that a partnership must engage in a “separate” business from whatever business is already being conducted. By its plain language, section 7-64-202(1) does not so require, and we note that a person may be admitted as a partner to a partnership either upon 
8 its formation or afterward, see § 7-64-205, C.R.S. 2023. So we reject this contention. ¶ 18 Even though the jury was not asked to find that the parties agreed to carry on a financial planning business as co-owners, we conclude there was enough evidence for it to have made that finding. Among other things, Duran testified that he was recruited by Montoya and Kosmicki to join their financial planning business as a partner. He testified that Kosmicki had installed a plaque that said “Partner” outside Duran’s door and had advertised him on the KIS website as a partner. ¶ 19 Duran explained that the memo titled “Payout to [Duran] for the first 12 months” reflected the parties’ agreement to split expenses and commissions equally between them for the first twelve months after Duran joined KIS. Duran acknowledged that the memo did not show the parties’ agreement that Montoya would transfer half her trail commissions to him once Kosmicki turned seventy, but he said it was a term verbally agreed upon by the parties. Duran’s testimony was corroborated by an October 7, 2019, conversation he had with Montoya and Kosmicki, during which Montoya expressed her understanding that they all “verbally 
9 agreed” — indeed, the agreement “ha[d] always been” — that she would split her trail commissions “50/50” with Duran when Kosmicki turned seventy. The jury was given the full transcript and played excerpts of the audio recordings of the October 7 conversation. ¶ 20 We acknowledge that there is contradictory evidence in the record, but we may not reweigh that evidence on appeal. See Murphy, 964 P.2d at 584. Thus, we conclude that there was sufficient evidence for the jury to find that the parties agreed to carry on a financial planning business as co-owners. See id. C. Contribution ¶ 21 A “partnership agreement” is an “agreement, whether written, oral, or implied, among the partners that governs relations among the partners and between the partners and the partnership.” § 7-64-101(20), C.R.S. 2023.
4 Under section 7-64-205, a person may be admitted as a partner to a partnership without making a 4 To the extent defendants contend that no partnership was formed because there was no written partnership agreement, section 7-64-
101(20), C.R.S. 2023, makes clear that a partnership agreement need not be written; it can be oral or even implied. 
10 contribution if “admission is pursuant to a written partnership agreement or other writing confirming the admission.” ¶ 22 Defendants contend, citing only section 7-64-205, that the converse must be true — that is, if there is no written partnership agreement, a person must make a contribution to become a partner. Because there was no written partnership agreement, they continue, Duran had to make a contribution to become a partner. Defendants further argue that the required contribution must be a capital contribution. They acknowledge that Duran claimed to have brought client relationships to the alleged partnership. But, citing only a 1995 Villanova Law Review article, defendants assert that, “[a]s a matter of law, existing clients in a services-related business such as financial planning . . . cannot be a contribution” creating a partnership. ¶ 23 Although the statute does not define the term “contribution,” because it is a word in common usage and “people of ordinary intelligence needn’t guess at its meaning,” we consider its dictionary definition. Butler v. Bd. of Cnty. Comm’rs, 2021 COA 32, ¶ 14; see Broomfield Senior Living Owner, LLC v. R.G. Brinkmann Co., 2017 COA 31, ¶ 18 (where a statute fails to define a term, we 
11 consider its common usage). “Contribution” means “the act of contributing,” such as “the giving or supplying of something (such as money or time) as a part or share” or “the giving or supplying of something that plays a significant part in making something happen.” Merriam-Webster Dictionary, https://perma.cc/9TQU-
LF45; see Black’s Law Dictionary 416 (11th ed. 2019) (A “contribution” is “[s]omething that one gives or does in order to help an endeavor be successful,” or “[a]n amount of money one gives in order to help pay for something.”).
5 ¶ 24 To be sure, section 7-64-205 does not include the term “capital contribution,” and defendants cite no authority for their assertion that the type of contribution contemplated by the statute is a capital contribution. Thus, we conclude that the contribution required by statute to form a partnership need not be a capital contribution. And although the jury was not asked whether Duran made a contribution to the partnership, we conclude that there was enough evidence for it to have made that finding. 5 The parties do not contend that “contribution” is an industry term or a term of art that would have a different meaning in the context of a partnership agreement. 
12 ¶ 25 The record shows that Duran brought over clients from his prior employer, provided labor, and paid expenses. Duran testified that he contributed $8 million in client assets from his prior employer, UBS, to the partnership. In the audio recording and transcript of the October 7 conversation, Montoya and Kosmicki acknowledge that Duran brought over his “UBS clients.” And Duran testified that, in addition to the $8 million in UBS clients, he generated long-term care policies in the amount of $5 million. ¶ 26 Duran explained that as soon as he joined KIS in September 2018, he attended and made presentations at client meetings and attempted to bring over UBS clients. He said he would be available if a client needed a financial plan or if there were assets to discuss that were not managed by KIS but posed an opportunity. ¶ 27 Duran also testified that he paid expenses to the partnership. He said that he, Montoya, and Kosmicki each applied for Paycheck Protection Program (PPP) loans for the partnership and that he put all the funds he received from the PPP loan into a joint expense account. And he introduced copies of checks he made from his personal account to KIS for expenses and wage reimbursement. 
13 ¶ 28 We again acknowledge that there is contradictory evidence in the record, but we may not substitute our judgment for that of the jury when evidence in the record supports the verdict. See Murphy, 964 P.2d at 584. We conclude there was sufficient evidence presented for the jury to reasonably find that Duran made the necessary contribution to become a partner under an oral partnership agreement. See id.
6 III. Challenge to the Denial of Defendants’ Motion for Directed Verdict and Post-Trial Motion ¶ 29 Defendants next contend that the district court erred by denying their motion for a directed verdict and allowing the breach of contract claim to go to the jury and that it further erred by not setting aside the jury verdict or granting a new trial. We are not persuaded. A. Standard of Review ¶ 30 We review de novo a trial court’s ruling on a motion for a directed verdict. See Reigel v. SavaSeniorCare L.L.C., 292 P.3d 977, 6 Because there was sufficient evidence for the jury to find a partnership on this basis, we need not address defendants’ alternative argument that the sharing of profits alone was insufficient to support the formation of a partnership. 
14 982 (Colo. App. 2011). A court may only grant a motion for a directed verdict “if the evidence compels the conclusion that reasonable jurors could not disagree because no evidence received at trial, or inferences therefrom, could sustain a verdict against the moving party.” Tisch v. Tisch, 2019 COA 41, ¶ 34. ¶ 31 We review de novo a court’s ruling on a motion for JNOV if “there are no genuine issues of material fact.” Dream Finders Homes LLC v. Weyerhaeuser NR Co., 2021 COA 143, ¶ 111 (quoting Cardenas v. Fin. Indem. Co., 254 P.3d 1164, 1167 (Colo. App. 2011)). A court may grant a JNOV “only if the evidence, taken in the light most favorable to the party opposing the motion and drawing every reasonable inference which may legitimately be drawn” in support of that party would not support a verdict by a reasonable jury in favor of the opposing party. Nelson v. Hammon, 802 P.2d 452, 454 (Colo. 1990). Where the factual basis of a directed verdict or a JNOV is called into question, we review the evidence and the record in favor of the nonmoving party. See Reigel, 292 P.3d at 982; Durdin v. Cheyenne Mountain Bank, 98 P.3d 899, 903 (Colo. App. 2004). 
15 ¶ 32 We review a trial court’s ruling on a motion for a new trial for abuse of discretion. See Acierno v. Garyfallou, 2016 COA 91, ¶ 28. A court may grant a motion for a new trial, as relevant here, if “[a]ny irregularity in the proceedings . . . prevented . . . a fair trial” or there were “[e]xcessive . . . damages.” C.R.C.P. 59(d)(1), (5); Rains v. Barber, 2018 CO 61, ¶ 11. B. Defendants Fail to Demonstrate that the District Court Erred ¶ 33 As best we understand, defendants contend that the basis for Duran’s claim for breach of the partnership agreement was nothing more than Montoya and Kosmicki dissociating
7 from the partnership. Defendants argue that section 7-64-602(1), C.R.S. 2023, allows a partner an absolute right to withdraw from a partnership at any time without liability unless the partner’s dissociation is wrongful. That statute provides that “[a] partner has the power to dissociate at any time, rightfully or wrongfully, by express will pursuant to section 7-64-601(1)(a)[, C.R.S. 2023].” § 7-64-602(1) (emphasis added). 7 Section 7-64-601, C.R.S. 2023, provides the circumstances under which a partner is “dissociated from a partnership,” and includes, as relevant here, a partner providing notice of their “express will to withdraw as a partner.” 
16 ¶ 34 Defendants assert that there are two ways that dissociation may be “wrongful,” neither of which applies here. They argue that because the alleged partnership had no express terms, their dissociation from it could not be wrongful under section 7-64-602(2)(a) (dissociation is wrongful if it “is in breach of an express provision of the partnership agreement”). Defendants also argue that because the partnership had no defined terms or undertakings, it was a partnership at will, and their dissociation from it could not be wrongful under section 7-64-602(2)(b) (if a partnership is “for a definite term or particular undertaking,” dissociation is wrongful if it occurs “before the expiration of the term or the completion of the undertaking”). So, the argument goes, if defendants did not wrongfully dissociate from the partnership, their dissociation cannot support a claim for breach of the partnership agreement. ¶ 35 Initially, we note that the record does not clearly establish that Montoya and Kosmicki’s dissociation from the partnership was rightful. True, the partnership agreement was not in writing, but that does not prevent it from having “express terms” that Montoya 
17 and Kosmicki breached.
8 But even if we assume that Montoya and Kosmicki’s dissociation from the partnership was not wrongful, the defendants’ arguments still fail for two reasons. ¶ 36 First, defendants did not argue that their dissociation was not wrongful in their motion for a directed verdict — they raised this argument for the first time in their C.R.C.P. 59 post-trial motion. At trial, defendants only argued that “a partnership agreement may not vary the power to dissociate as a partner under section 7-64-602[(1)].” Thus, the argument that the dissociation was not wrongful could not have been a basis for the district court to enter a directed verdict on Duran’s breach of contract claim. See State Farm Mut. Auto. Ins. Co. v. Goddard, 2021 COA 15, ¶ 25 (directed verdicts are not favored and may only be granted in the clearest of cases). ¶ 37 Second, and more importantly, to the extent that Montoya and Kosmicki argue that their dissociation from the partnership absolves them of liability for any breach of the partnership 8 Although the jury was not asked to find whether the partnership was “at will” — meaning that it had no defined terms or undertakings, see § 7-64-101(21) — it appears that the district court so found. 
18 agreement, they are wrong. Their argument appears to rest on a faulty premise — that the only possible breach of the partnership agreement was their dissociation from the partnership. But Duran’s theory of the case, and the evidence presented at trial, was not that dissociation alone was the breach; instead, Duran argued that Montoya and Kosmicki breached the partnership agreement by claiming that Duran was never a partner and denying him associated trail commissions. ¶ 38 Whether a partner has an absolute right to dissociate and whether dissociation was rightful or wrongful are irrelevant questions when dissociation is not the alleged breach. Indeed, section 7-64-405(2)(a), C.R.S. 2023, authorizes a partner to maintain an action against the partnership or another partner to “[e]nforce the partner’s rights under the partnership agreement.” And section 7-64-602(3), which specifies the damages that are recoverable for wrongful dissociation, clarifies that such “liability is in addition to any other obligation of the partner to the partnership or to the other partners.” These provisions make clear that a partner is not absolved of liability for breach of a partnership agreement by dissociating from the partnership. 
19 ¶ 39 A reviewing court’s duty is to reconcile a jury’s verdict with the evidence if at all possible. Lee’s Mobile Wash v. Campbell, 853 P.2d 1140, 1143 (Colo. 1993). As the district court noted in denying defendants’ post-trial motion, this case involved a simple breach of contract claim. Despite defendants’ attempt to recharacterize the claim, Duran always alleged that the breach was the refusal to recognize the partnership and the resultant denial of the value of his interest in the partnership. Viewing the record evidence in favor of Duran as the nonmoving party, see Reigel, 292 P.3d at 982, we conclude that the defendants have failed to meet their burden to prove they were entitled to a directed verdict, a JNOV, or a new trial. See Tisch, ¶ 34; Nelson, 802 P.2d at 454; Rains, ¶ 11. IV. Challenge to the Jury Instructions ¶ 40 Defendants contend that the district court erred in its instructions to the jury on the law of partnerships. We disagree. A. Standard of Review ¶ 41 “We review de novo whether a jury instruction states the law correctly, and we review the trial court’s decision to give a particular jury instruction for an abuse of discretion.” Walker v. Ford Motor Co., 2017 CO 102, ¶ 9. “The trial court has substantial discretion 
20 in formulating jury instructions so long as they include correct statements of the law and fairly and adequately cover the issues presented.” Taylor v. Regents of Univ. of Colo., 179 P.3d 246, 248 (Colo. App. 2007). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, unfair, or is based on a misapprehension or misapplication of the law. See Core-Mark Midcontinent Inc. v. Sonitrol Corp., 2016 COA 22, ¶ 49. B. The District Court Did Not Err in Instructing the Jury ¶ 42 Defendants contend that the district court misstated the law regarding partnerships in its instructions to the jury. But they do not identify any instruction that was legally inaccurate. Instead, they contend that the court should have given additional instructions so that the jury had a more complete view of the law of partnerships. We review these contentions for an abuse of discretion. See Walker, ¶ 9. 1. Sharing Profits ¶ 43 Defendants specifically contend that the court did not instruct the jury that sharing profits does not create a partnership where those profits were paid as wages. We note that defendants fail to identify where they tendered an instruction on profit sharing or 
21 where the court rejected it, so we reject this contention. See O’Quinn v. Baca, 250 P.3d 629, 631 (Colo. App. 2010) (declining to address an issue where the parties failed to direct the court to a place in the record where the issue was raised and ruled on). 2. Contribution ¶ 44 Defendants also contend that the court failed to instruct the jury that a contribution was necessary to establish an oral partnership. As an initial matter, the parties dispute whether this argument is preserved but fail to point us to relevant portions of the record. See Scoular Co. v. Denney, 151 P.3d 615, 617 (Colo. App. 2006) (the appellant is responsible for providing an adequate record to support his claims of error). ¶ 45 Defendants cite to a redlined version of a proposed instruction stating that “[a] person shall not be admitted to a partnership without an economic interest unless there is a written partnership agreement or other writing confirming the admission.” The proposed instruction to which defendants cite is an attachment to an email chain between the attorneys and the court clerk sent on March 9, 2022, which defendants attached as an exhibit to their post-trial motion. But that email does not appear to be the end of 
22 the discussion between counsel regarding the jury instructions. Instead, as reflected in an attachment to a “Notice: Filing of Attorney/Court Correspondence and Attachments” filed post-trial by the defendants, the email chain continues on March 10 and includes a clean version of the instructions to which the parties had apparently agreed. This version of the instructions, which does not include the instruction defendants argue should have been given, appears to be the one that the court reviewed with the parties during the jury instruction conference. Indeed, the words “contribution” and “economic interest” do not appear in the part of the transcript reflecting the jury instruction conference. ¶ 46 Because it does not appear that the proposed instruction was ever tendered to the court, we conclude the issue was not preserved and decline to address it. See O’Quinn, 250 P.3d at 631; cf. People v. Tardif, 2017 COA 136, ¶ 10 (“An alleged instructional error is preserved if the defendant tenders the desired relevant instruction even if the defendant does not object or otherwise raise the issue during the jury instruction conference.”). 
23 3. Right to Dissociate ¶ 47 Lastly, defendants contend that the district court failed to instruct the jury on a partner’s right to dissociate at any time and that a partnership agreement may not abrogate that right. At trial, defendants tendered a proposed instruction stating the following: A partnership agreement may not vary the power to dissociate as a partner. A partner has the power to dissociate at any time, rightfully or wrongfully, by express will. A partner is dissociated from a partnership upon the partnership’s having notice of the partner’s express will to withdraw as a partner. ¶ 48 Defendants did not tender an instruction explaining what it means to “wrongfully” dissociate. So, to the extent defendants contend that the court erred by not instructing the jury on what “wrongful dissociation” means, we conclude that contention is not preserved.
9 See Mobell v. City & Cnty. of Denver, 671 P.2d 433, 435 (Colo. App. 1983) (declining to consider whether the trial court 9 Duran argues that defendants waived the entire issue because counsel said “[o]kay” after the court declined to give defendants’ proposed combined instruction on partnership law. However, tendering an instruction is generally sufficient to preserve an issue for appeal. See In re Estate of Chavez, 2022 COA 89M, ¶ 20; People v. Tardif, 2017 COA 136, ¶ 10. 
24 should have instructed the jury on a particular issue where there was no request for or tender of an instruction). ¶ 49 We further conclude that the court did not abuse its discretion by declining to instruct the jury on a partner’s statutory right to dissociate from a partnership because, again, Duran’s theory of breach was not that Montoya and Kosmicki withdrew from the partnership but that they denied the existence of the partnership and deprived Duran of the agreed-upon trail commissions. See Taylor, 179 P.3d at 248 (trial courts have broad discretion over jury instructions). V. Challenge to the Damages Awarded ¶ 50 Defendants challenge the damages awarded on several grounds, asserting that (1) the district court did not enforce its own order excluding certain damages testimony and evidence; (2) the damages were speculative and based on insufficient evidence; (3) there was no legal basis to award the damages; and (4) the court erroneously awarded prejudgment interest. We address and reject each contention in turn. 
25 A. The Court’s Prior Order ¶ 51 Before trial, Duran sought an extension of time to submit expert disclosures because his expert needed more time to review documentation recently received in response to a subpoena. The district court denied the request because it found that the delay was due to Duran’s own failure to timely serve the subpoena on a broker dealer, which resulted in the information being disclosed late to his expert. The court further sanctioned Duran by ordering that the late-disclosed expert witness would not be allowed to testify and that any information received after the discovery deadline that had not been shared with defendants would be inadmissible. ¶ 52 Defendants contend that by allowing Duran to testify to his damages at trial, the court did not enforce its own order. We do not read the court’s order so narrowly. The court precluded Duran from presenting expert testimony on damages and from relying on any late-disclosed information, but it did not ban Duran from presenting any evidence regarding damages. Duran did not introduce the excluded expert report or testimony at trial. Nor did he rely on the expert’s calculations or on the information received 
26 after the discovery cutoff to calculate his damages.
10 Accordingly, we perceive no inconsistency between the court imposing discovery sanctions and allowing Duran to testify to a measure of his damages at trial. B. Evidence Supporting the Damages Award ¶ 53 Defendants contend that Duran’s damages were speculative, based on insufficient evidence, and must be discounted to present value. We are not persuaded. ¶ 54 “The amount of damages to be awarded is a matter within the sole province of the jury and may not be disturbed unless it is completely without support in the record.” Hauser v. Rose Health Care Sys., 857 P.2d 524, 531 (Colo. App. 1993). For a breach of contract claim, “[t]he measure of damages . . . is the amount it takes to place the plaintiff in the position [they] would have occupied had the breach not occurred.” Technics, LLC v. Acoustic 10 To the extent defendants argue that only an expert could have computed damages, we decline to address the argument because defendants waived it by conceding at trial that expert testimony was not necessary. Vititoe v. Rocky Mountain Pavement Maint., Inc., 2015 COA 82, ¶ 60 (arguments premised on waived errors “will receive no consideration by an appellate court” (quoting Robinson v. City & Cnty. of Denver, 30 P.3d 677, 684 (Colo. App. 2000))). 
27 Mktg. Rsch. Inc., 179 P.3d 123, 126 (Colo. App. 2007), aff’d, 198 P.3d 96 (Colo. 2008). ¶ 55 The amount claimed may be an approximation so long as the fact that damages exist is certain and “the plaintiff introduces some evidence which is sufficient to permit a reasonable estimation of damages.” Hauser, 857 P.2d at 531. “In proving the amount of damages it is sufficient for a plaintiff to provide ‘[a] reasonable basis for computation and the best evidence obtainable under the circumstances of the case which will enable the trier of the facts to arrive at a fairly approximate estimate of the loss.’” Tull v. Gundersons, Inc., 709 P.2d 940, 945 (Colo. 1985) (quoting A to Z Rental, Inc. v. Wilson, 413 F.2d 899, 908 (10th. Cir. 1969)). ¶ 56 Duran presented sufficient evidence to allow the jury to make a reasonable estimate of his damages. Duran measured the value of his lost interest in the partnership by the amount of Montoya’s trail commissions to which he would have been entitled over a period of five years if Montoya and Kosmicki had not denied that the partnership existed. See Technics, LLC, 179 P.3d at 126 (defining the measure of damages). Duran testified that he calculated his damages by analyzing a trail commissions chart, a 
28 copy of Montoya’s tax return Schedule C, and the amount of his own transactional commissions. From these data sources, he computed a base sum of estimated trail commissions for 2019, multiplied the base sum by five for the five years he was supposed to have received half of Montoya’s commissions, and then divided that figure by two. Duran also introduced the exhibits that he relied upon for his calculations. ¶ 57 Duran’s damages were neither speculative nor unsupported by the evidence. See Hauser, 857 P.2d at 531; Tull, 709 P.2d at 945. To be sure, defendants were entitled to attack Duran’s computation of damages, and they did so thoroughly at trial, including through the presentation of expert testimony. But in the end, the jury was tasked with determining the amount of damages to award, and apparently it was persuaded by Duran’s evidence. We are not at liberty to second-guess the jury’s damages award when it is supported by the record. See Hauser, 857 P.2d at 531. ¶ 58 We are also not persuaded by defendants’ argument that Duran claimed future lost profits as damages and therefore the award should have been discounted to present value. True, damages for future lost profits should be reduced to present value. 
29 See Technics, LLC, 179 P.3d at 126. But, as the district court determined, Duran’s damages were a measure of the lost value of his partnership interest, not an award of the partnership’s future profits. Under these circumstances, it is not clear to us, and defendants cite no authority establishing, that the damages award must, as a matter of law, be discounted to present value. See DSCO, Inc. v. Warren, 829 P.2d 438, 442 (Colo. App. 1991) (Once the plaintiff establishes its damages resulting from a breach of contract, the burden of proof is on the breaching party “to produce evidence on which any reduction of damages is to be predicated.”). ¶ 59 Even so, defendants presented expert testimony explaining the concept of “present value” as discounting a future projection based on risk and uncertainty. The expert also testified that Duran’s damages calculations were “a projection of future income” and should be discounted. We presume the jury weighed this evidence when determining damages and we may not disturb its determination. See Margenau v. Bowlin, 12 P.3d 1214, 1219 (Colo. App. 2000) (“It is for the jury to determine the weight of, and to resolve conflicts and inconsistencies in, the evidence.”); Lee’s Mobile 
30 Wash, 853 P.2d at 1143 (reviewing courts should not disregard a jury’s verdict if it has support in the evidence). C. Legal Basis ¶ 60 Defendants contend that there was no legal basis for Duran to receive damages because the dissolution of a partnership cuts off a partner’s right to future profits. Defendants’ argument again rests on the faulty premise that the jury awarded Duran future partnership profits as damages. ¶ 61 As noted, the measure of damages for a breach of contract “is the amount it takes to place the plaintiff in the position it would have occupied had the breach not occurred.” Technics, LLC, 179 P.3d at 126. The district court instructed the jury that if it found in favor of Duran on the breach of contract claim, it must award general or nominal damages. To be entitled to general damages, Duran had to prove by a preponderance of the evidence that he had incurred damages resulting from the breach. “General damages” were defined as “the amount required to compensate the plaintiff for losses that are the natural and probable consequence of the defendants’ breach of the contract.” Losses that are a “natural” 
31 result of a breach are those “that an ordinary person of common experience would expect to follow from a breach.” ¶ 62 Duran alleged he was damaged by defendants’ denial of the partnership’s existence and presented evidence that the value of his lost partnership interest could be measured by the amount of trail commissions he expected to earn over a five-year period. Duran did not claim that he was entitled to a share of future partnership income after the partnership dissolved. D. Prejudgment Interest ¶ 63 Defendants contend that Duran was not entitled to prejudgment interest on his damages award because the money was not “wrongfully withheld” under section 5-12-102(1)(b), C.R.S. 2023, and because prejudgment interest is not applicable to an award of future lost profits. We disagree. ¶ 64 First, to the extent that defendants’ argument is based on the premises that (1) they had an absolute right to dissociate from the partnership without liability, or (2) Duran was claiming future profits rather than the value of his lost partnership interest, it fails for the reasons we have already explained. 
32 ¶ 65 Second, in a breach of contract action, the nonbreaching party is entitled to recover prejudgment interest from the time of the breach. See Logixx Automation, Inc. v. Lawrence Michaels Fam. Tr., 56 P.3d 1224, 1230 (Colo. App. 2002). The phrase “wrongfully withheld” is “given a broad, liberal construction to effectuate the legislative purpose of compensating parties for the loss of money or property to which they are entitled.” Id. at 1229. Given that the jury awarded Duran damages for the value of the partnership interest he lost when Montoya and Kosmicki breached the partnership agreement, we conclude that the district court did not err by awarding prejudgment interest from the date of the breach. See id. at 1230; see also Westfield Dev. Co. v. Rifle Inv. Assocs., 786 P.2d 1112, 1122 (Colo. 1990) (affirming award of prejudgment interest under section 5-12-102(1)(b) on lost profits awarded as damages for intentional interference with contract). VI. Challenge to the Costs Order ¶ 66 Defendants contend that the district court abused its discretion by (1) determining that KIS was not the prevailing party entitled to attorney fees and costs and (2) awarding Duran fees for paralegal work disguised as costs. We disagree. 
33 A. Prevailing Party ¶ 67 Defendants contend that the district court abused its discretion by concluding that KIS was not the prevailing party when all claims asserted against it were resolved in its favor. We disagree. ¶ 68 To be considered a “prevailing party,” the “party must succeed on a significant issue in the litigation and achieve some of the benefits sought.” Anderson v. Pursell, 244 P.3d 1188, 1194 (Colo. 2010). It is the “sole discretion” of a trial court to determine who is the prevailing party in a case that involves many claims. Archer v. Farmer Bros. Co., 90 P.3d 228, 231 (Colo. 2004). This is because “the trial court is in the best position to evaluate the relative strengths and weaknesses of each party’s claims, the significance of each party’s successes in the context of the overall litigation, and the time devoted to each claim.” Id. ¶ 69 The district court did not consider KIS to be a “prevailing party” because Duran prevailed on “significant issues.” And “based on the totality of the results” of the case, the court determined that Duran was the only prevailing party. We see no reason to disagree. 
34 ¶ 70 True, Duran brought two wage-related claims against KIS, and the court directed a verdict in favor of KIS on those two claims. But the jury entered a verdict against Montoya and Kosmicki in favor of Duran on his breach of contract claim, which was the primary focus of his lawsuit, and the court entered a judgment against all three defendants on their counterclaims. Because defendants filed their counterclaims jointly and their interests were aligned throughout the trial proceedings, we are unpersuaded by their attempt to separate each individual defendant now. Thus, we conclude that the court was within its discretion to declare Duran the sole prevailing party in this multi-party, multi-claim litigation. See id. B. Costs ¶ 71 Defendants contend that the district court abused its discretion by awarding as costs the amounts Duran paid i-Legal. They maintain that i-Legal performed paralegal tasks such as preparing and reviewing documents for disclosure, preparing exhibits for trial, and assisting Duran’s attorney at trial. Defendants highlight the fact that the person performing the tasks for i-Legal held a law degree. Thus, they argue that i-Legal provided 
35 paralegal work, which can only be recovered as attorney fees. We are not persuaded. ¶ 72 Under C.R.C.P. 54(d), the prevailing party is entitled to recover their “reasonable costs.” See also § 13-16-122, C.R.S. 2023 (identifying the types of costs recoverable); Cherry Creek Sch. Dist. No. 5 v. Voelker, 859 P.2d 805, 813 (Colo. 1993) (explaining that the list of expenses that can be awarded as costs under section 13-16-122 is illustrative and not exclusive). An award of costs is within the discretion of the trial court, and “that court’s findings as to the reasonableness and amount of costs will not be disturbed on appeal absent an abuse of discretion.” Morris v. Belfor USA Grp., Inc., 201 P.3d 1253, 1261 (Colo. App. 2008). ¶ 73 Defendants are correct that fees billed for duties performed by a paralegal are not properly classified as costs recoverable under C.R.C.P. 54(d). Morris, 201 P.3d at 1263. But the district court found that the services provided at trial by i-Legal were “professional IT services” that were not performed under the supervision of an attorney. The invoices submitted for i-Legal’s work support the court’s finding and reflect that i-Legal processed, prepared, and printed exhibits for disclosure and use at trial and 
36 assisted with presenting exhibits at trial. It is irrelevant that the person who performed the tasks has a law degree when the tasks performed are not considered legal work. The court concluded that it “greatly benefited by the efficient services performed” and that neither the cost documentation nor the court’s own observations led it to conclude that i-Legal had performed paralegal work. We perceive no abuse of discretion. See Anderson, 244 P.3d at 1193. VII. Request for Appellate Attorney Fees and Costs ¶ 74 Defendants request an award of appellate attorney fees under section 8-4-109, C.R.S. 2023, of the Wage Claim Act. They also request an award of attorney fees under section 13-17-102, C.R.S. 2023, asserting that Duran’s “claims lacked substantial justification.” Because defendants have not prevailed on appeal, we necessarily conclude that they are not entitled to appellate attorney fees and costs. VIII. Disposition ¶ 75 We affirm the judgment and orders of the district court. JUDGE JOHNSON and JUDGE TAUBMAN concur.